UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

Gigi Jordan,

               Plaintiff,


-v-                                 12 Civ. 1742 (KBF)


Raymond A. Mirra, Jr.,

               Defendant.
-----------------------------------------------------------x



**EXHIBITS TO MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO LIFT STAY OF PROCEEDINGS**




Allan L. Brenner (ALB5018)
536 West Penn Street – 2nd Floor
Long Beach, New York 11561
516-897-6145
brenner.allan@yahoo.com

*Attorney for Plaintiff*



Dated:  New York, NY
         November 8, 2013

## INDEX TO EXHIBITS

Exhibit A:   Decision and Order, August 2, 2013

Exhibit B:   Email, ADA Kerry O'Connell, Nov. 26, 2010

Exhibit C:   Transcript, April 13, 2012

Exhibit D:   Transcript, Nov. 16, 2012

Exhibit E:   Letter, ADA Kerry O'Connell, Nov. 29, 2012

Exhibit F:   Transcript, Nov. 30, 2012

Exhibit G:   Subpoenas, Dec. 6, 2013

Exhibit H:   Letter, Hon. Charles H. Solomon, Dec. 10, 2012

Exhibit I:   Letter, ADA O'Connell, Dec. 12, 2012

Exhibit J:   Transcript, Dec. 14, 2012

Exhibit K:   Transcript, Jan. 11, 2013

Exhibit L:   Transcript, Sept. 7, 2012

Exhibit M:   Stroz Friedberg, Report of Digital Forensic Analysis in: The
             People of the State of New York v. Gigi Jordan, Feb. 11, 2013

Exhibit N:   Notice of Motion, Ronald L. Kuby, April 15, 2013

Exhibit O:   Transcript, Sept. 4, 2013

Exhibit P:   Letter, Ronald L. Kuby, Sept. 30, 2013

Exhibit Q:   Transcript, Oct. 4, 2013

Exhibit R:   Transcript, Oct. 28, 2013

Exhibit S:   Mirra v. Jordan, 13 Civ. 5519 (AT) (S.D.N.Y. 2013)

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   PART 82

---------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,      :       **DECISION AND ORDER**
                                          :       INDICTMENT 621-10
          -against-                       :
                                          :
GIGI JORDAN,                  DEFENDANT    :
---------------------------------------------------------------------x

CHARLES H. SOLOMON, J.:

In a motion filed July 1, 2013, defendant renews her request to be released on bail. This

motion represents defendant's third such application. In two prior decisions, the first filed April

23, 2010 and the second filed August 11, 2011, defendant's previous applications were denied.

The Court's August 11, 2011 decision was affirmed by the Appellate Division. *See*, People ex

rel Kuby v. Merritt, 96 AD3d 607 (1st Dept 2012), *lv denied* 19 NY3d 813. The People filed a

response in opposition to the defendant's instant motion on July 23, 2013.

Defendant now contends that because of her lengthy pretrial detention, her right to due

process guaranteed by the Fourteenth Amendment has been violated and she is entitled to be

released on bail. Defendant relies primarily on United States v. Gonzalez Claudio, 806 F3d 334

(2d Cir 1986), and a line of Second Circuit decisions dealing with the issue of release on bail as a

consequence of extended pretrial detention.

Defendant claims that the People are responsible for thirty-four months of delay, which

they identify in three discrete periods. Defendant first points to an almost two year delay that

she contends it took the People to provide her with discovery retrieved from her electronic

devices. Next, a three month period in which defendant claims the People obstructed her right to

inspect these electronic devices. Finally, a seven month period related to the December, 2012

subpoenas issued by the People to the Department of Correction for defendant's recorded

telephone conversations. Relying on federal constitutional law, defendant's argument is that this

extensive delay, caused predominately by the People, coupled with the fact that she does not pose a flight risk, requires this Court to set bail. The People oppose defendant's application and point to numerous periods of delay caused by the defense, including the repeated change of lead counsel, the filing, withdrawing and re-filing of CPL 250.10 notice, and extensive litigation initiated by the defense relating to numerous other issues.

It is undisputed that defendant has suffered an extensive period of pretrial incarceration in this case. The cause of the delay in bringing this case to trial does not rest exclusively with the People nor with the defense. Both sides are responsible, to some degree, for the delay. For example, the defense has had no less than five different lead counsel since the inception of the case. Parenthetically, it should be noted that when current lead counsel entered the case in April of this year, almost immediately thereafter he sought a postponement of the September 16, 2013 trial date, primarily because of the extensive amount of work that had to be done to prepare for trial. Additionally, there has been delay over the filing of CPL 250.10 notice as each lead counsel has considered and reconsidered this issue, resulting in the filing, withdrawing and re-filing of the notice. The Court also notes the extraordinary amount of motion practice on the part of the defense. Significantly, there has been a considerable amount of litigation over the defendant's recorded telephone conversations which the People have subpoenaed.

The People have also contributed to the delay. For example, they were dilatory in complying with discovery requirements involving electronic devices in their possession. In addition, the subpoenas they issued in December of 2012 to the Department of Correction were not made know to defense counsel until several months later. Because of that, defense counsel have been delayed in their review of the thousands of phone conversations the People have in

2

their possession, which the defense should have been given much earlier.

Without apportioning the blame, the fact that this case has not proceeded to trial, unfortunate as that may be, is not attributable solely to the defense, nor solely to the prosecution. The Court has calendared this case on an almost weekly basis since the beginning of the year in an effort to resolve the legal issues and move this case to trial. Since March, 2010, defendant has been produced before me on over sixty different dates. During that time, the Court has issued approximately seventeen written decisions on legal issues raised by the defense. Presently pending before the Court is a motion to dismiss the indictment for prosecutorial misconduct filed by the defense on April 29, 2013 and responded to by the prosecution on June 21, 2013. The defense indicated that they will file a reply in mid-August and the Court plans on deciding the motion in September. In addition, the litigation concerning the defendant's recorded telephone conversations is continuing. The case cannot move forward to trial until defense counsel have listened to the most recently disclosed phone conversations, which number in the thousands. Although this case will not go to trial next month, as originally planned, that is primarily due to the fact there are several outstanding legal issues that still remain unresolved.

Having again considered the factors set forth in CPL 510.30, I find that the setting of bail is inappropriate in this case for the same reasons set forth in my previous decisions. Other than the length of time defendant has been incarcerated, there are no changed circumstances that would warrant the setting of bail. Accordingly, defendant's application that bail be set is again denied.

Dated:  August 2, 2013
        New York, New York

CHARLES H. SOLOMON, J.S.C.

3

# EXHIBIT B

Email, ADA Kerry O'Connell, November 26, 2010

**From:** O'Connell, Kerry [mailto:OCONNELLK@dany.nyc.gov]
**Sent:** Friday, November 26, 2010 6:03 PM
**To:** Rusty Wing
**Subject:** Re: Gigi Jordan

I don't have their list. I recognized Jerry's voice. I don't know who her lawyers are. I am the only one who has the calls. I started to listen and then I figured it out and sent you the email. You should send ME a list of who they are so that when they identify themselves I can skip them. I know of you, Shargel and co.,Weinstein (who's also off), Agnifilo, Mark Peterson (?). She asks someone to call Paul Shechtman but I don't know if he is one of her lawyers or not. I can assure you that I have not listened to many of the calls and to none of the calls to anyone I knew to be a lawyer. Make certain that your list includes private cell numbers and not just offices. I'm happy to keep this glitch between you and me.


Kerry OConnell
Bureau Chief
Trial Bureau 80
DANY 212.335.4336
---------------------

# EXHIBIT C

Aml  4-13-12 JORDAN / Colloquy

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF NEW YORK :  CRIMINAL TERM  PART 82

3   - - - - - - - - - - - - - - - - - - - X

4   THE PEOPLE OF THE STATE OF NEW YORK        Indictment No.
                                               0621/10
5                     - against -

6

7   GIGI JORDAN,                               CALENDAR CALL

8

9                     Defendant.

10  - - - - - - - - - - - - - - - - - X
    100 Centre Street
11  New York, N.Y.

12  DATE HELD:  APRIL 13, 2012

13  B E F O R E :

14          HONORABLE CHARLES SOLOMON,

15              J u s t i c e .

16  A P P E A R A N C E S :
       CYRUS R. VANCE, ESQ.,
17     DISTRICT ATTORNEY, NEW YORK COUNTY
       BY: KERRY O'CONNELL, MARIT DELOZIO,
18     and AARON  GINANDES, ESQ.
       For the People
19
       STEVEN MURPHY, RONALD KUBY,
20      and ALAN DERSHOWITZ, ESQS.,,
       For the Defendant
21

22

23

24                              Anne Love,  CSR,
                           Senior Court Reporter
25

Aml  4-13-12 JORDAN / Colloquy

1    making the inquiry on April 13 and we'll file a new set of

2    papers I suppose for the further relief that we requested in

3    our Notice of Motion.

4              I will note this has just been a colossal and

5    foolish and unnecessary waste of time and resources to get a

6    simple answer.

7              And if the ultimate answer is Ms. O'Connell stands

8    up and says I don't remember, then so be it.  We could have

9    done that in December

10             THE COURT:  Do you have any information or any

11   belief that Justice McLaughlin didn't read and consider this

12   affidavit?

13             MR. DERSHOWITZ:  Yes.

14             THE COURT:  You do?  Fine.

15             Then put it in writing.

16             Put the basis for that in writing, please.

17             I'd like to see it.

18             Let's move along.

19             The privilege issue.  Privilege review of those

20   documents:  The E-mails, phone calls, everything else.

21             There was an application to have the D.A.'s Office

22   not have one of their lawyers who is not associated with

23   this case listen to and review everything.  And that's been

24   put on Hold.  It's going to stay on that.

25             Mr. Kuby, have you finished, the defense team

Aml   4-13-12 JORDAN / Colloquy

1          I don't want anyone else reviewing anything from
2     the D.A.'s Office.  I don't want a firewall law now.
3          That hasn't been done.  All been on Hold.
4          I'd like to wait until Mr. Kuby is finished
5     reviewing everything.
6          If you then receive what he says he claims is
7     privileged, defense claims is privileged, and you dispute
8     that, I'd like to know what you're disputing.
9          In other words, if there are certain phone calls
10    or E-mails, or whatever else there is that the defense says
11    should not be looked at by the prosecution, and you feel
12    that you should be able to, I'd like to isolate those calls,
13    those documents, those E-mails, whatever it is.  And then
14    we'll decide how we're going to resolve that issue.
15          MS. O'CONNELL:  My understanding is we're not to
16    be reviewing those items.
17          So it's difficult for me to say what exactly --
18          THE COURT:  He's going to have to identify what it
19    is.  For example, if it's an E-Mail, what do you call it, a
20    header, to Ronald Kuby or Gerald Shargel, or Mr. Wing's
21    office, you know it's confidential communication.
22          MS. O'CONNELL:  Yes, those are the easy ones.
23          THE COURT:  Phone calls to Riker's Island made to
24    Miss Jordan with a phone number, those are easy.
25          If there's something in dispute, I'd like to know

Aml  4-13-12 JORDAN / Colloquy

1    about it.  And then we'll resolve that issue, how we're

2    going to determine if those are privileged or not and who is

3    going to decide it.

4              Fair?

5              MR. KUBY:  Sounds delightful, dare I say it.

6              THE COURT:  That issue will be resolved hopefully

7    in a few weeks.

8              You'll get everything to the prosecution.

9              They'll come back and tell me in writing if

10   there's a dispute as to anything.

11             MR. KUBY:  Yes, Judge.

12             THE COURT:  Good.

13             As far as the thumb drives, Mr. Brittson.

14             Is that all taken care of?

15             MR. KUBY:  Yes.

16             THE COURT:  Good.  Every time we hear debates and

17   arguments about Mr. Brittson and thumb drives.

18             That's been taken care of.

19             Next thing:  That E-mail, 22 page E-mail that

20   there's some issue concerning sealing.

21             MR. KUBY:  Right.

22             THE COURT:  When is the defense claiming that was

23   sealed?

24             MR. KUBY:  The document was sealed on February 16.

25             THE COURT:  By?

# EXHIBIT D

Transcript, November 16, 2012                              1

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF NEW YORK - CRIMINAL TERM - PART: 82

3   - - - - - - - - - - - - - - - - - - - - X

4   THE PEOPLE OF THE STATE OF NEW YORK,          Indict. No.
                                                  0621/2010
5

6     -against-                                   CHARGE

7   GIGI JORDAN,
                                                  MURDER 2
8       DEFENDANT.
                                                  CALENDAR CALL
9   - - - - - - - - - - - - - - - - - - - - X

10                          100 Centre Street
                            New York, New York 10013
11                          November 16, 2012

12

13  B E F O R E:

14                  HONORABLE CHARLES SOLOMON,
                    JUSTICE OF THE SUPREME COURT
15

16  A P P E A R A N C E S:

17  FOR THE PEOPLE:
    CYRUS R. VANCE, JR., ESQ.
18  DISTRICT ATTORNEY, NEW YORK COUNTY
    One Hogan Place
19  New York, New York 10013
    BY:  KERRY O'CONNELL, ESQ.
20       MARIT DeLOZIER, ESQ.
         AARON GINANDES, ESQ.
21  Assistant District Attorneys

22

23  BY:  STEVEN G. MURPHY, ESQ.
         RONALD L. KUBY, ESQ
24       PROFESSOR ALAN M. DERSHOWITZ
    Attorneys for the Defendant
25

                    Susan Pearce-Bates, RPR, CCR
                       Senior Court Reporter

1      to any phone calls.  I want to know what each side has in

2      their possession.  That's the start of all of this.

3              Once I know what each side has in its possession,

4      we can go to the next step.

5              Anyone have anything to say about that?

6              So on, or before November 30th I would like to

7      see all of the subpoenas the DA's Office issued and I would

8      like to see what the DA's Office received in response to

9      those subpoenas.

10             The same for the defense.  I would like to see

11     what was received from the Department of Corrections, not

12     the calls themselves.

13             Okay.

14             MR. KUBY:  I just have one question about what we

15     are submitting to you.  I understand all of the paperwork

16     that you have requested.

17             In addition, when the Department of Corrections

18     submits the recorded calls, the actual calls, they submit

19     them on a disc.  You put -- I put the disc into my little

20     machine, and my computer, actually, and there is a picture

21     full of the data related to those calls, not the content,

22     but the date of the call, the time the call began.  It does

23     not include the number called, the size of the file, Ms.

24     Jordan's pin numbers, and other data points in sort of a

25     screen shot.

1      You will be happy to hear, Your Honor, these are

2  copies of the data extracted from the iPod Touch that was

3  listed on that index that it had been removed from the

4  Celebrate Program we had the H Tab (sic) place it into

5  sealed envelopes.  We have not seen it,  We didn't want

6  to --

7           THE COURT:  Those are two envelopes?

8           MS. O'CONNELL:  One for you Judge.

9           THE COURT:  You can give that to the Clerk.

10           MS. O'CONNELL:  We didn't look at them.  The

11  headers are not just the generic word document inside.

12  They have some information on them which we had them sealed

13  for you and defense.

14           MR. KUBY:  I acknowledge receipt of those only

15  subject to the same privilege and review as the other

16  physical documents review that we learned was completed

17  except for the January 24th production, which is still

18  being argued over.

19           I would note that this now apparently on this day

20  almost three years after these items were seized, this now

21  completes the electronic discovery production to the best

22  of my knowledge.

23           Lastly, could you please tell them not to listen?

24           THE COURT:  Again, I don't want to keep repeating

25  the same thing.

Susan Pearce-Bates, RPR, CCR
Senior Court Reporter

1            The ruling has been made about the phone

2    conversations, the Rikers calls, the recorded calls, the

3    defense is going to review them, when the defense tells the

4    prosecution what they claim is privileged, and the

5    prosecution disputes what their claim of privilege is, then

6    I will decide the issue with respect to all the phone

7    calls.

8            I haven't been asked to decide anything else.

9    When I am asked to, I will, and, again, that completes the

10   proceeding today I hope.

11           MR. KUBY:  And I hate to do it like this, it's

12   really childish even for me, could you please ask them, one

13   of them to say that they understand what you just said?

14           THE COURT:  I am not going to.

15           MR. KUBY:  Please.

16           THE COURT:  I am not going to ask anyone to say

17   anything.  I think what I said is pretty clear, I hope, and

18   I have not yet, I have not yet been asked to rule on any

19   claim of privilege concerning any phone call, when I am, I

20   will.

21           MR. KUBY:  Thank you, Judge.

22           THE COURT:  November 30th is the next appearance.

23           MR. MURPHY:  Thank you, Judge.

24                 (End of calendar call.)

25


                         Susan Pearce-Bates, RPR, CCR
                            Senior Court Reporter

# EXHIBIT E

Letter, Kerry O'Connell, November 29, 2012

OF THE
**COUNTY OF NEW YORK**
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

November 29, 2012

Re:     People v. Gigi Jordan
        Indictment No. 00621/2010

Justice Charles H. Solomon
Part 82, Criminal Term
Supreme Court of the State of New York
County of New York
100 Centre Street
New York, NY  10013

Dear Justice Solomon,

Enclosed please find copies of all of the subpoenae duces tecum issued by the People to
the New York City Department of Corrections and the logs returned by Department of
Corrections in response in this case.  Photocopies of the CDs are also enclosed, and a list
(via "screenshot") of the contents of each CD.  The subpoenae were issued from the
period of February 16, 2010 to July 30, 2012.  No recorded calls were provided from the
defendants stay at Elmhurst Hospital from February 5, 2010 to May 25, 2010 because the
Department of Corrections does not record calls at Elmhurst. These documents have
been numbered 1338-1543.  Documents labeled 1544-1549 are subpoenae that were
faxed to New York City Department of Corrections but received no response.

Sincerely,

Kerry O'Connell
Assistant District Attorney
212 335-4336

cc: w/o encl.
Ronald L. Kuby, Esq.
Stephen G. Murphy, Esq.

# EXHIBIT F

Transcript, November 30, 2012                                    1

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF NEW YORK - CRIMINAL TERM - PART: 82

3   - - - - - - - - - - - - - - - - - - - - - X

4   THE PEOPLE OF THE STATE OF NEW YORK,          Indict. No.
                                                  0621/2010
5

6    -against-                                    CHARGE

7   GIGI JORDAN,
                                                  MURDER 2
8      DEFENDANT.
                                                  CALENDAR CALL
9   - - - - - - - - - - - - - - - - - - - - - X

10                          100 Centre Street
                            New York, New York 10013
11                          November 30, 2012

12
    B E F O R E:
13
                       HONORABLE CHARLES SOLOMON,
14                     JUSTICE OF THE SUPREME COURT

15
    A P P E A R A N C E S:
16
    FOR THE PEOPLE:
17  CYRUS R. VANCE, JR., ESQ.
    DISTRICT ATTORNEY, NEW YORK COUNTY
18  One Hogan Place
    New York, New York 10013
19  BY:  KERRY O'CONNELL, ESQ.
         AARON GINANDES, ESQ.
20  Assistant District Attorneys

21

22  BY:  STEVEN G. MURPHY, ESQ.
         RONALD L. KUBY, ESQ
23       PROFESSOR ALAN M. DERSHOWITZ
    Attorneys for the Defendant
24

25

                    Susan Pearce-Bates, RPR, CCR
                       Senior Court Reporter

1          the defense.

2                   I will review everything.  I want to make sure

3          that each side has the same calls.  I want to make sure

4          that the DA's Office has no privileged conversations, and

5          we will get to the issue concerning those erased, or

6          scrubbed calls.

7                   MR. DERSHOWITZ:  But, Your Honor, the only

8          concern, among many concerns that we have, we have ongoing

9          lawyer/client communications that are being chilled and

10         deterred by our knowledge that the State of New York is

11         recording our phone calls.  And we just want to make sure

12         that if that happens, it shouldn't happens.

13                  THE COURT:  It shouldn't happen.

14                  MR. DERSHOWITZ:  If it happens we want to have

15         the evidence preserved if we want to make a Constitutional

16         challenge to that, there is a case in the Second Circuit,

17         where they threw out a multiple murder prosecution because

18         the government scrubbed wiretaps, and the Second Circuit

19         unanimously held that in the absence of the evidence of

20         what was on the wiretaps we must presume the worst.

21                  THE COURT:  Again, they shouldn't be recording

22         any phone conversations between Ms. Jordan and her lawyers.

23                  MR. DERSHOWITZ:  If you can order that, Your

24         Honor, you can order that they not be scrubbed if they are

25         recorded.

                         Susan Pearce-Bates, RPR, CCR
                            Senior Court Reporter

# EXHIBIT G

# SUBPOENA (DUCES TECUM)

### FOR A WITNESS TO ATTEND THE
## SUPREME COURT OF THE STATE OF NEW YORK

### In the Name of the People of the State of New York

To:   **Susan O'Leary**
of:   **NYC DOC**
      **Legal Divison**
      **New York, NY**

**YOU ARE COMMANDED** to appear before the **SUPREME COURT** of the County of New York, **PART 82**, at the Criminal Court Building, 100 Centre Street, between Hogan Place and White Streets, in the Borough of Manhattan, of the City of New York, on December 14, 2012 at 9:00 AM, **as a witness in a criminal action** prosecuted by the People of the State of New York against:

### GIGI JORDAN

and to bring with you and produce the following items:

- ANY AND ALL PHONE RECORDINGS AND CALL LOG INFORMATION FROM 5/25/2010 TO THE PRESENT DATE FOR THE FOLLOWING BOOK AND CASE NUMBER:

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS**, you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

Dated in the County of New York,
December 6, 2012

CYRUS R. VANCE, JR.
**District Attorney, New York County**

By: _____

Kerry O'Connell
**Assistant District Attorney**
212 335-4336

*Case #:* 00621/2010

# SUBPOENA (DUCES TECUM)

## FOR A WITNESS TO ATTEND THE
## SUPREME COURT OF THE STATE OF NEW YORK

### In the Name of the People of the State of New York

To:  **Susan O'Leary**
of:  **NYC DOC**
     **Legal Division**
     **New York, NY**

YOU ARE COMMANDED to appear before the **SUPREME COURT** of the County of New York, **PART 82**, at the Criminal Court Building, 100 Centre Street, between Hogan Place and White Streets, in the Borough of Manhattan, of the City of New York, on December 14, 2012 at 9:00 AM, as a witness in a criminal action prosecuted by the People of the State of New York against:

### GIGI JORDAN

and to bring with you and produce the following items:

- ANY AND ALL PHONE RECORDINGS AND CALL LOG INFORMATION FROM <u>5/25/2010</u> <u>TO THE PRESENT DATE FOR</u> THE FOLLOWING **BOOK AND CASE NUMBER:**





IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS, you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

Dated in the County of New York,
December 6, 2012

CYRUS R. VANCE, JR.
**District Attorney, New York County**

By: _____

Kerry O'Connell
Assistant District Attorney
212 335-4336

*Case #:* 00621/2010

Subpoenas, December 6, 2012

# SUBPOENA (DUCES TECUM)

### FOR A WITNESS TO ATTEND THE
## SUPREME COURT OF THE STATE OF NEW YORK

### In the Name of the People of the State of New York

To:    Susan O'Leary
of:    NYC DOC
       Legal Divison
       New York, NY

**YOU ARE COMMANDED** to appear before the **SUPREME COURT** of the County of New York, **PART 82**, at the Criminal Court Building, 100 Centre Street, between Hogan Place and White Streets, in the Borough of Manhattan, of the City of New York, on December 14, 2012 at 9:00 AM, as a witness in a criminal action prosecuted by the People of the State of New York against:

### GIGI JORDAN

and to bring with you and produce the following items:

- ANY AND ALL PHONE RECORDINGS AND CALL LOG INFORMATION FROM 5/25/2010 TO THE PRESENT DATE FOR THE FOLLOWING **BOOK AND CASE NUMBER:**



**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS**, you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

Dated in the County of New York,
December 6, 2012

CYRUS R. VANCE, JR.
**District Attorney, New York County**

By:    _____

Kerry O'Connell
Assistant District Attorney
212 335-4336

*Case #:* 00621/2010

# EXHIBIT H



**Supreme Court
of the
State of New York**

**CHARLES H. SOLOMON**
ACTING SUPREME COURT JUSTICE

JUSTICES' CHAMBERS
100 CENTRE STREET
NEW YORK, N.Y. 10013

December 10, 2012

<u>By Hand</u>

Kerry O'Connell, Esq.
Assistant District Attorney
New York County District Attorney's Office
One Hogan Place
New York, New York 10013

Re: <u>People v. Gigi Jordan</u>
Ind. No 621-10

Dear ADA O'Connell,

The Court is in receipt of your submission filed November 29, 2012 concerning the telephone calls defendant made while incarcerated. With respect to the information submitted corresponding to CD number 4, eight pages that purport to be a list of defendant's recorded calls were included. Of those eight pages, seven pages are duplicates of the first page. The same problem exists with respect to CD number 5. Of the four pages that purport to be a list of defendant's recorded telephone calls, three are duplicates. Please review these submissions to clarify this for the Court.

Additionally, in your letter dated November 29, 2012 which was filed in connection with your submission, you state that "documents labeled 1544-1549 are subpoenae that were faxed to the New York City Department of Corrections but received no response." In reviewing those six subpoenas, however, four appear to be the same subpoenas that you have attached to CD nos. three, four, five and six and which contain the responses by the Department of Correction to those four subpoenas. Again, we would appreciate it if you would clarify this for the Court.

Very truly yours,

Charles H. Solomon

cc: Ronald L. Kuby, Esq.
    By Fax

# EXHIBIT I

DISTRICT ATTORNEY
OF THE
**COUNTY OF NEW YORK**
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

By Hand and facsimile                    December 12, 2012
Hon. Charles H. Solomon
Supreme Court, Criminal Term
Part 82
100 Centre Street
New York, NY 10013

Re: People v. Gigi Jordan
Indictment No. 00621/2010

Dear Justice Solomon,

The Court correctly notes in its letter of December 10, 2012, that documents #1374-81 are supplicants of the "screen shots" for CD 4. The same is true for documents related to CD 5, for which we supply another, more legible set of "screen shots" labeled 1550 to 1557. With respect to the documents labeled 1544 to 1549, please note as follows:

Document 1544 represents a duplicate of the subpoena corresponding with CD #6.
Document 1545 represents a duplicate of the subpoena corresponding with CD #5.
Document 1548 represents a duplicate of the subpoena corresponding with CD #4.
Document 1549 represents a duplicate of the subpoena corresponding with CD #3.

However, the enclosed documents 1546 and 1547 are "additional subpoenae," for which we have no return endorsed by the Department of Correction. There are no gaps in the actual production of CDs, save for the period in which the defendant was housed at Elmhurst.

We produced all subpoenae in our files, whether we believed them to have been submitted to DOC or merely stray copies or unsent copies, because the Court requested that we supply it with all of the subpoenae in our files. We erred, in other words, on the side of producing all documents. I apologize for the confusion caused by my description of the documents.

Sincerely,

Kerry O'Connell
Assistant District Attorney
212 335-4336

cc: Stephen G. Murphy, Esq.
    Ronald L. Kuby, Esq.
    w/o encl.

# EXHIBIT J

Transcript, December 14, 2012                                    1

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK - CRIMINAL TERM - Part 82
 2    ---------------------------------------x  )
      THE PEOPLE OF THE STATE OF NEW YORK        )   INDICTMENT #
 3                                               )   621/2010
                                                 )
 4                 -against-                      )
                                                 )   CHARGE:
 5                                               )   MURDER2
      GIGI JORDAN,                                )
 6                                               )
                               DEFENDANT.        )   CALENDAR CALL
 7                                               )
                                                 )
 8    ---------------------------------------x

 9                        100 Centre Street
                          New York, New York 10013
10                        December 14, 2012

11

12    B E F O R E:     HONORABLE CHARLES SOLOMON
                       Justice of the Supreme Court
13
      A P P E A R A N C E S:
14

15    For the People:

16           CYRUS R. VANCE, JR., ESQ.
             New York County District Attorney
17           One Hogan Place
             New York, New York  10013
18           BY: KERRY J. O'CONNELL, ESQ.
                 MARIT DeLOZIER, ESQ.
19           Assistant District Attorneys

20    For the Defendant:

21           LAW OFFICE OF RONALD L. KUBY
             119 West 23rd Street, Suite 900
22           New York, NY 10011
             BY: RONALD L. KUBY, ESQ.
23
             PROFESSOR ALAN M. DERSHOWITZ, ESQ.
24
             STEVEN G. MURPHY, ESQ.
25
```

                        Susan Bell Siano, RPR
                        Senior Court Reporter

1          The issue I think is pretty clear to me.  I'd like
2     the defense, all the devices we're talking about, to tell
3     the prosecution what you assert is privileged and they can't
4     look at or listen to pre-crime.  Once again that is done
5     with everything.  They'll come back with their position in
6     writing and I will then have the defense respond and rule.
7     That's the way it's going to be done and you can't argue
8     with that.
9          MR. KUBY:  Can we talk briefly about post-crime?
10         MR. DERSHOWITZ:  I'd like to know whether it's
11    their position they are entitled to listen to 141 of my
12    phone calls.
13         THE COURT:  I'm coming to that.  Please.  I didn't
14    say we're adjourning.  That concerns the pre-crime issues,
15    the re-imaging and the assertion of any privilege which will
16    be concerning any of those documents.
17         The Rikers Island phone calls, what I said last
18    time, reading from the minutes:
19         "My aim is to make sure that everything you have
20    directed at the People they know about, and that they have."
21         That's it, in simple terms.  Page 13 of the
22    minutes.
23         And I don't know and I can't tell from what's been
24    submitted if that fact is true, if that has been
25    accomplished.  What I want to make sure again is that

```
 1    everything the People have received from the Department of
 2    Corrections in response to their subpoenas I know about,
 3    what they have and the defense has exactly the same thing.
 4    And I don't think we're there and that is a problem.
 5              The issue about the DA's subpoenas and the
 6    subpoenas themselves being turned over to the defense, the
 7    defense subpoenas, I signed a subpoena to have the
 8    Department of Corrections give defense copies of the
 9    prosecution subpoenas.  They don't keep them, so they don't
10    honor the subpoena.  I have them now.  The prosecution
11    objects to the defense getting copies of them.  I said I
12    would give you notice if I was going to order to turn them
13    over.  I'm giving you notice.
14              I think the defense should have them only so that
15    we can accomplish what I want to accomplish.  And that is
16    very simple.  I want to know what the prosecution has, what
17    they received from Rikers Island.  And I want to make sure
18    everything that prosecution has received the defense has.
19    Whatever else is out there right now I don't care about.
20              I just want to know what the prosecution has and
21    what the defense had and make sure they have the same thing.
22              Any questions about that?  Okay.
23              MS. O'CONNELL:  Judge, only that the discs
24    themselves represent what we have, not the subpoenas.  It's
25    the discs themselves.
```

Susan Bell Siano, RPR
Senior Court Reporter

# EXHIBIT K

Transcript, January 11, 2013

1

```
 1   SUPREME COURT   NEW YORK COUNTY
     TRIAL TERM      PART:  82
 2

 3      - - - - - - - - - - - - - - - - - X     :
        THE PEOPLE OF THE STATE OF NEW YORK     : IND.#
 4                                              : 621/10
                                                :
 5                                              :
           - against -                          :
 6                                              : CHARGE:
                                                : MURD2
 7                                              :
        GIGI JORDAN,                            :
 8                                              :
                          Defendant.    : PROCEEDINGS:
 9      - - - - - - - - - - - - - - - - - X   : Calendar Call

10
                        100 Centre Street
11                      New York, New York  10013
                        January 11, 2013
12
     B E F O R E :   HONORABLE  CHARLES SOLOMON
13                   Justice of the Supreme Court

14   A P P E A R A N C E S :
     For the People:
15
                        CYRUS R. VANCE, JR., ESQ.,
16                      New York County District Attorney
                           One Hogan Place
17                      New York, New York 10013
                        BY: KERRY J. O'CONNELL, ESQ.
18                          PETER CASOLARO, ESQ.
                            PENELOPE BRADY, ESQ.
19                          MARIT DeLOZIER, ESQ.
                            AARON GINANDES, ESQ.
20                          Assistant District Attorneys

21   For the Defendant:

22                      LAW OFFICE OF RONALD L. KUBY
                           119 West 23rd Street, Suite 900
23                      New York, NY 10011
                        BY: RONALD L. KUBY, ESQ.
24                      PROFESSOR ALAN M. DERSHOWITZ, ESQ.
                        STEVEN G. MURPHY, ESQ.
25
```

Melinda León, RPR
Senior Court Reporter

Proceedings                                    8

```
 1        just want to know if there is another three months worth of

 2        calls, are we dealing with those too or has the DA's office

 3        finally decided they have all the calls they need.

 4             THE COURT:  That's up to the People, again, I'm

 5        not going to say they can't subpoena further.

 6             MR. KUBY:  No.  No, but if we're trying to --

 7             THE COURT:  I know what you're asking.

 8             Do we have, other than what the defense has been

 9        given, do you have anything else that you have received

10        from Corrections?

11             MS. O'CONNELL:  I haven't subpoenaed any

12        additional calls of the defendant.  Whether I do or not,

13        apparently I'm not allowed to listen to them so.

14             THE COURT:  No, if they are not privileged.

15             MS. O'CONNELL:  They will pile up in a drawer and

16        we'll deal with them when we deal with them.

17             THE COURT:  If they are not privileged, certainly

18        you can listen to them.  That's not the issue.  Right now I

19        just want to make sure everyone has the same calls.  You

20        don't have anything in addition to what you have given over

21        to defense.

22             MS. O'CONNELL:  No, your Honor, except for that

23        one CD with the one phone call that we delivered to the

24        court.  That was delivered to the defendant.

25             THE COURT:  Correct, in court that's the hello
```

```
 1                  MR. DERSHOWITZ:  Talk to you or at least talk to
 2        Mr. Kuby, listen and talk to Mr. Kuby, participate.
 3                  THE COURT:  Doesn't matter to me, I don't care.
 4                  MR. KUBY:  It has an off switch too which he
 5        doesn't have here.
 6                  THE COURT:  As long as it won't disrupt the
 7        proceedings that's fine with me.
 8                  MR. DERSHOWITZ:  Thank you, your Honor, I
 9        appreciate that.
10                  THE COURT:  But, again, the 250.10 issue I want to
11        have this information next Friday.  Because I'd like to
12        move this along get this examination done.  And --
13                  MR. DERSHOWITZ:  But that's my issue so.
14                  THE COURT:  Fine.  Just so we are all on notice
15        let me just talk about one thing that I think I mentioned
16        last year 2012 was setting a trial date.  I'm setting a
17        trial date today.
18                  So just so everyone understands when the case is
19        going to be tried.  So you can have your schedules adjusted
20        accordingly if they have to be.  We are going to have all
21        -- and, again, if it can be earlier it will be earlier.
22        I'm just letting everyone know Wednesday September 11th,
23        Thursday September 12th, Friday September 13th will be all
24        pretrial issues, all motions in limine, everything else.
25                  If they are not discussed before then they will be
```

1        discussed those three days.  And we are going to have a

2        jury panel Monday, September 16th.  Just so everyone

3        understands that and that's not negotiable.  That's when

4        the trial is taking place.

5                If we have to be here every day in August in order

6        to resolve all your remaining issues, if they are not

7        resolved before then, we'll be here.  Just so we are all

8        understanding the schedule.

9                Now defense, anything you wish to discuss today?

10               MR. KUBY:  The only thing I want to ask the court

11       is you had said that our motions with respect to invasion,

12       defense motion with respect to what we perceive

13       characterize as the invasion of attorney-client privilege

14       of those --

15               THE COURT:  With respect to what phone calls?

16               MR. KUBY:  That's correct.

17               THE COURT:  Riker's calls.

18               MR. KUBY:  You had stated that that motion would

19       be deferred until we had a chance to receive and review the

20       subpoenas.  We have had chance to receive and review the

21       subpoenas.  I don't know if I can get that document

22       together by next Friday.

23               THE COURT:  If you need another week, that's fine.

24               MR. KUBY:  So why don't you give me two weeks on

25       that.

# EXHIBIT L

Transcript, September 7, 2012

```
SUPREME COURT        NEW YORK COUNTY
TRIAL TERM           PART 82
-----------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK : INDICTMENT #
                                    : 621-10
                                    :
                                    :
          AGAINST                   : CHARGE
                                    : Murd 2
     GIGI JORDAN,                   :
               Defendant            :
-----------------------------------x Proceedings
```

```
                    100 Centre Street
                    New York, New York 10013
                    September 7, 2012
```

B E F O R E:

      HONORABLE: CHARLES SOLOMON,
           JUSTICE OF THE SUPREME COURT

APPEARANCES: (Same as previously noted)

-----------------------------------------------------------------

      THE CLERK: Number one, Gigi Jordan.

      THE COURT: Ms. Jordan is here now. Your

appearances.

      MR. KUBY: Ronald Kuby, 119 West 23rd Street, New

York, New York.

      MR. DERSHOWITZ: Alan Dershowitz of counsel, same

office.

      THE COURT: I know Mr. Stephen Murphy is also

Transcript, September 7, 2012
**Proceedings**

Page 3

1       can have her produced next week.

2            THE COURT:  Can we do this, can we hold her here

3       maybe this morning.  I'm sure out of all the people in the

4       District Attorney's squad, someone on a Friday morning

5       would be able to come over here with a q-tip and take some

6       saliva from inside the cheek.

7            MR. DERSHOWITZ:  Can we in the meantime confer

8       with her?

9            THE COURT:  Sure, you can certainly do that.  But

10      this is not intrusive, this will not be a problem.

11           MR. KUBY:  I'll do it myself.

12           MR. DERSHOWITZ:  I just had it done, painless.

13           THE COURT:  As far as the decision that I have

14      today concerning the inspection of the devices, I would

15      like to discuss that with counsel.

16           Number one, the items.  Again, however many there

17      are, I don't want to go through each and every one, I would

18      like them brought to the courtroom.

19           I'll not have this done in front of me, either in

20      the witness room or the jury room.  We will have the

21      defense expert, their experts, Mr. Sherman or somebody

22      else.

23           MR. KUBY:  The person who does the measuring and

24      photographing of the devices is Mr. Sherman.  The person

25      who does the re-imaging is Mr. Perine.

**Randy Berkowitz**
**Sr. Court Reporter**

Transcript, September 7, 2012
**Proceedings**

Page 4

1           THE COURT:   They will both be there?

2           MR. KUBY:   Certainly that will be my

3    understanding.

4           THE COURT:   Someone will videotape what they do?

5           MR. KUBY:   I don't know if Mr. Sherman is going to

6    operate the camera while Mr. Perine does the re-imaging or

7    we will have a third party doing the camera.  I have not

8    worked out those logistics.  It can be worked out very

9    quickly.

10          THE COURT:   That is not a problem right now.  The

11   District Attorney's Office, when this is brought over,

12   obviously the people who bring it over can be present when

13   this is done.

14          They do not have to appear on video, they can be

15   two feet away, next to the camera, behind, make sure

16   everything is going according to plan.

17          I would like to have that done rather quickly.

18   I'm thinking about next week.

19          In my decision I leave it to the lawyers to work

20   out, maybe I should not.  I leave it to the lawyers to work

21   out a date when this can be done.

22          MS. O'CONNELL:   If Mr. Kuby calls Mr. Britson

23   (phon) he will be the person who arranges for the person to

24   be there.

25          MR. KUBY:   And Mr. Britson is currently speaking

# EXHIBIT M

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013



Report of Digital Forensic
Analysis in:

*The People of the State of New York*
*v.*
*Gigi Jordan*

February 11, 2013

STROZ FRIEDBERG

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

## Table of Contents

I.    **Executive Summary** ...................................................................................................... 1

II.   **Stroz Friedberg Background** ......................................................................................... 1

III.  **Evidence Considered** ..................................................................................................... 2

   A.   Media Belonging to Ms. Jordan ............................................................................... 2

   B.   Materials Provided by the NYPD .............................................................................. 4

   C.   Materials Provided by the District Attorney's Office .............................................. 4

IV.   **Findings** .......................................................................................................................... 5

   A.   Usage of the MacBook Air While In the NYPD's Custody ......................................... 5

      1.   Usage of MacLockPick ........................................................................................ 5

      2.   Viewing Documents, Emails, Photos in the gigijordan015 Account ................... 6

      3.   Changes to Microsoft Office .............................................................................. 8

      4.   The Usage of Ms. Jordan's MacBook Air after Her Arrest Changed Data ........... 8

   B.   Questions About Data Provided by NYPD ................................................................ 9

      1.   The 320 GB NYPD Drive Does Not Contain Readable Data ................................. 9

      2.   Questions About the 1 TB NYPD Hard Drive ...................................................... 10

V.    **Conclusion** ..................................................................................................................... 12

# I.    Executive Summary

Stroz Friedberg, LLC ("Stroz Friedberg") was retained by The Law Offices of Ron Kuby, on behalf of his client Gigi Jordan to provide consulting services and to conduct independent forensic preservations and analysis of digital forensic evidence seized by the New York City Police Department ("NYPD") and certain other devices provided to defense counsel by the NYPD and the District Attorney's Office.

The purpose of the forensic analysis was to determine, among other things, whether the NYPD and the District Attorney's Office followed established forensic best practices in order to collect, preserve, and maintain all available data from these devices; and whether any potentially relevant data on any of the devices has been lost, corrupted, or destroyed.

Based on a review of the materials enumerated in this report, Stroz Friedberg found that the NYPD did not follow forensic best practices, thereby not properly preserving the data. As a result, data has been altered and additional data may have been lost. It is not possible to either ascertain the full extent of lost data, nor is it possible to recover all the potentially lost data.

This report is not intended to detail each and every aspect of Stroz Friedberg's work in this engagement. Stroz Friedberg reserves the right to supplement or modify this report based on any new or additional information not previously examined, or brought to its attention or based on any new or additional allegations.

# II.    Stroz Friedberg Background

Founded in 2000, Stroz Friedberg is an international firm specializing in critical areas of digital risk management, including digital forensics, electronic discovery, data breach and cybercrime response, and business intelligence services and investigations. Stroz Friedberg's management includes former federal and state prosecutors and former law enforcement officers with both government and private-sector experience in traditional and cyber-based investigations, digital forensics, data preservation and analysis, infrastructure protection, and electronic discovery.  Many of its staff of digital forensic examiners, electronic security professionals, electronic discovery specialists, and private investigators joined Stroz Friedberg following careers in law enforcement, the intelligence community, and consulting.

The analysis set forth in this report was performed by or under the direction and supervision of Michael F. McGowan, a Director of Digital Forensics at Stroz Friedberg. Mr. McGowan co-manages Stroz Friedberg's digital forensics operations. Mr. McGowan has conducted hundreds of digital forensic examinations and data acquisitions from various media types, including laptop and desktop computers, servers, and mobile devices. Mr. McGowan has provided trial and hearing testimony on a number of

occasions and has been admitted as an expert in digital forensics in federal and state court, including on behalf of the United States Department of Justice in connection with one of the Enron Task Force prosecutions. A copy of Mr. McGowan's C.V. is attached to this report as Exhibit A.

## III.    Evidence Considered

### A.  Media Belonging to Ms. Jordan

Stroz Friedberg understands that 13 electronic devices were seized from Ms. Jordan by the NYPD. The seized devices included:

     i.    two laptops: a MacBook Pro and a MacBook Air;

    ii.    seven mobile phones: three BlackBerry smartphones, two Kyocera phones, and two Samsung phones;

    iii.    two USB flash drives;

    iv.    one iPod Touch mobile device; and

    v.    one Sony camera containing a memory card.

Based upon on a handwritten NYPD Crime Scene Unit report, Stroz Friedberg understands that seven of the above-referenced electronic storage devices were seized from the Peninsula Hotel at the time of Ms. Jordan's arrest on February 5, 2010:

1. a MacBook Pro bearing serial number W8946HA644 that was assigned the identifier PC1 by the District Attorney's Office;

2. a MacBook Air, bearing serial number W89490EM9A7 that was assigned the identifier PC2;

3. a BlackBerry 8530 bearing serial number MEIDDEC268435458803127764 that was assigned the identifier BB1;

4. a BlackBerry 8330 bearing serial number 268435458800084423 that was assigned the identifier BB3;

5. a Samsung SCH-U350 bearing serial number MEIDA000001DD8f8E3 that was assigned the identifier CP1;

6. a Samsung SCH-U350 bearing serial number MEIDA000001785FE02 that was assigned the identifier CP2; and

7. an Apple iPod Touch bearing serial number 1E9470846K2.

Stroz Friedberg understands that the following four devices were seized from Ms. Jordan's residence by the NYPD following Ms. Jordan's arrest:

1. a BlackBerry 8530 bearing serial number ESN07614165637 that was assigned the identifier BB2;

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

2.  a Kyocera E1100-NEO bearing serial number 12809602475 that was assigned the identifier CP3;

3.  a Kyocera E1100-NEO, bearing serial number 12810166704 that was assigned the identifier CP4; and

4.  a Sony camera containing a Memory Stick Pro Duo SD card bearing the serial number F707L6L-AYBD1000000 that was assigned the identifier CAM1.

Certain electronic storage devices were forensically preserved by the NYPD, the District Attorney's Office, and by Stroz Friedberg. The preservations performed by Stroz Friedberg were authorized by Judge Charles Solomon and were observed by representatives from the District Attorney's Office. The following table sets forth which devices were preserved by which organization according to the records that Stroz Friedberg has reviewed. The table includes the identifiers assigned to each device by the District Attorney's Office ("DANY") and the date that each device was preserved.

| Forensic Preservation of Ms. Jordan's Devices | | | |
|---|---|---|---|
| **Device** | **Stroz Friedberg** | **DANY** | **NYPD** |
| PC1 | 12/05/12 | 04/29/11 | 04/01/10 |
| PC2 | 12/05/12 | 06/01/11 | 07/22/10 |
| BB1 | 12/06/12 | 06/01/11 | 04/02/10 |
| BB2 | Not Imaged | Not Imaged Based on Documentation Received by Stroz Friedberg | Not Imaged Based on Documentation Received by Stroz Friedberg |
| BB3 | 12/06/12 | 12/30/11 | Not Imaged Based on Documentation Received by Stroz Friedberg |
| CP3 | 12/05/12 | 12/30/11 | Not Imaged Based on Documentation Received by Stroz Friedberg |
| CP4 | 12/05/12 | 12/22/11 | Not Imaged Based on Documentation Received by Stroz Friedberg |
| CP1 | 12/05/12 | 06/28/11 | 04/02/10 |
| CP2 | 12/05/12 | 06/28/11 | 04/02/10 |
| FM1 | Not Imaged | 06/17/11 | Not Imaged Based on Documentation Received by Stroz Friedberg |
| FM2 | 12/06/12 | 09/17/10 | Not Imaged Based on Documentation Received by Stroz Friedberg |
| iPod Touch | 12/05/12 | Not Imaged Based on Documentation Received by Stroz Friedberg | 04/02/10 |
| CAM1 | 12/06/12 | 01/06/12 | Not Imaged Based on Documentation Received by Stroz Friedberg |

As noted in the above table, Stroz Friedberg was not able to preserve data from two devices:

i.  the BlackBerry phone that was identified as BB2. The BlackBerry is password-protected and Stroz Friedberg understands that neither the government nor the defense knows the password.

STROZ FRIEDBERG

ii.      the 2 gigabyte USB Flash drive that was identified as FM1. Stroz Friedberg was not able to image the 2 gigabyte USB drive despite multiple attempts as the device was not able to be recognized by any of the computers from which we attempted to acquire it in December 2012. According to the materials provided to Stroz Friedberg, the District Attorney's Office was able to acquire a forensic image of the device's contents at an earlier period in time.

## B.  Materials Provided by the NYPD

In December 2012, at the time that Stroz Friedberg preserved the media from the seized devices pursuant to Judge Charles Solomon's authorized forensic inspection, Stroz Friedberg also preserved two devices that contained data preserved by the NYPD (the "NYPD Devices"):

1. a Western Digital My Passport 1 terabyte external hard drive, bearing the serial number of WXN1A50E3163T (the "1 TB NYPD Drive"). Included within the contents of this media are several forensic preservations of media from the seized devices that were made by the NYPD according to the documentation and that are summarized above in Table 1; and

2. a HP Simple Save external hard drive containing a 320 gigabyte Western Digital WDC WD3200BEVT-2 320 GB hard drive, serial number WD-WXG1A3045972 ("320 GB NYPD Drive"). As will be discussed further in Section IV.B.1, the drive did not appear to contain any readable data.

## C.  Materials Provided by the District Attorney's Office

In addition to the seized devices, Stroz Friedberg also received and analyzed media provided to the defense by the District Attorney's Office (the "DA Devices"):

1. a Staples CD-R, serial number 6110PJ122LH15298 bearing a hand-written label "Forensic Reports from DANY July 2012;"

2. a Memorex DVD-R, serial number cgH012184940E08 bearing a hand-written label "GiGi JORDAN 621/2010 PC1+PC2 User Profiles Data -LH 12-13 2011" that contained files copied from two laptop computers that were among the seized devices;

3. a CD-R, serial number RFD80M-80144 80, bearing a hand-written label "FM1 + FM2 DATA FILES 1/6/2012 -LH HTAU" that contained files that were purported to have been copied from two USB flash drives that were among the seized devices;

4. a Memorex DVD+RDL, serial number F01005F22VHg010051007F19, bearing a hand-written label "GiGi JORDAN 621/2010 REPORTS FOR: BB3-CAMI-CP3-CP4" that contained reports about the data contained on the BlackBerry identified as BB3, the Kyocera cell phones identified as CP3 and CP4, and the memory card contained within the Sony camera;

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

## IV.   Findings

### A.   Usage of the MacBook Air While In the NYPD's Custody

We observed evidence that Ms. Jordan's MacBook Air laptop had been used after her arrest when the device was in the custody of the NYPD. Specifically, the forensic evidence suggests the following activity occurred on the MacBook Air from approximately 11:58 p.m. on February 5, 2010 until approximately 3:37 a.m. on February 6, 2010:[1,2]

i.      The use of a utility known as MacLockPick to obtain the user's password;

ii.     Viewing documents, email messages, and digital photographs stored within Ms. Jordan's account; and

iii.    Making changes to the Microsoft Office software installed on Ms. Jordan's computer using Office setup files accessed from a 64GB external hard drive.


### 1.   Usage of MacLockPick

According to the system log files on the MacBook Air, the computer was used until approximately 3:31 a.m. on February 5, 2010. The log recorded periodic system activity that occurred during the morning and early afternoon of February 5, 2010, but the next time the log file records an attempt to login was that evening at 11:58 p.m. According to the documentation that I reviewed, this login attempt occurred when the MacBook Air laptop was in the custody of the NYPD.

The system logs also showed that an external drive with the volume name "MACLOCKPICK" was connected two minutes later at 12:00 a.m. on February 6, 2010 and the use of a software application called "MacLockPick" started at approximately the same time. MacLockPick is a utility manufactured by SubRosaSoft and offered in two software versions: one that is commercially available and one that is restricted to law enforcement only. The law enforcement only version has the capability to obtain passwords from a Macintosh computer that is powered-on or in sleep mode.

Following the MacLookPick activity, the laptop was shutdown at 12:02 a.m. on February 6, 2010. The laptop was restarted at 3:17 a.m. and shut down again at 3:18 a.m. The system log indicates that the root user, which is the administrative user account on a modern Macintosh computer, was the user that logged in at the time.

Subsequently, the laptop was restarted at 3:20 a.m. The activity that occurred during this time period (until the last recorded shutdown of the computer at 3:37 a.m.) occurred within the "gigijordan015" user

---

[1] The dates and times in this report are represented in Eastern Standard Time.
[2] Stroz Friedberg submitted an earlier version of this report dated January 24, 2013 in which this activity was incorrectly reported to occur in December 2010 due to a typographical error.

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

account. As such, it is my opinion that the MacLockPick utility was likely used to obtain the password for the gigijordan015 user account and to log in.

## 2. Viewing Documents, Emails, Photos in the gigijordan015 Account

The system log file recorded activity with the MacBook Air's Microsoft Word application from 3:21 a.m. to 3:25 a.m. as well as within the Mail application at 3:26 a.m. In addition, based on my review of the com.apple.recentitem.plist, which tracks recently opened programs and files, the iPhoto application was also used during this time period. The following is a listing of three files that appear to have been opened during this time period:

1. jude.docx
2. the last night
3. atomback@milbank.com.mailtoloc

The filesystem metadata reflect that the "jude.docx" document was modified during this time period at 3:26 a.m. The forensic evidence does not reveal what changes, if any, were introduced into the file; the metadata merely records the fact that a modification occurred.

The following table summarizes the eleven messages that were modified or accessed during this time period according to their filesystem metadata:

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

| Filename | From | To | Subject | Date |
|----------|------|-----|---------|------|
| 202.emlx | Barbara A OConnell <bao2@ntrs.com> | gigi jordan <gigijordan015@gmail.com> | Checking In | Mon, 1 Feb 2010 11:09:39 -0500 |
| 203.emlx | Walsh, Patrick (BALA CYNWYD, PA) <patrick_walsh@ml.com> | gigijordan015@gmail.com | ***-21268 | Mon, 01 Feb 2010 18:15:34 -0500 |
| 204.emlx | Suzi Tortora <suzitortora@me.com> | Gigi Jordan <gigijordan015@gmail.com> | Appt today | Tue, 02 Feb 2010 07:45:49 -0500 |
| 205.emlx | Mark Tarnopolsky <tarnopol@mcmaster.ca> | gigijordan015@gmail.com <gigijordan015@gmail.com> | Re: Report | Tue, 02 Feb 2010 09:01:39 -0500 |
| 206.emlx | Bruce Kolleda <bkolleda@gmail.com> | gigijordan015@gmail.com | Wire | Tue, 2 Feb 2010 10:17:37 -0500 |
| 23.emlx | gigi jordan | | | Wed, 3 Feb 2010 22:07:28 -0800 |
| 594.emlx | gigijordan015@gmail.com | email@vzw.com | 6465994621 | Fri, 22 Jan 2010 23:39:04 +0000 |
| 600.emlx | gigijordan015@gmail.com | DrZippy@aol.com <DrZippy@aol.com> | Delivered: Re: today...... | Thu, 28 Jan 2010 23:08:38 +0000 |
| 662.emlx | gigi jordan <gigijordan015@gmail.com> | atomback@milbank.com | test | Thu, 4 Feb 2010 21:35:59 -0800 |
| 663.emlx | gigi jordan <gigijordan015@gmail.com> | dheyl@milbank.com | test | Thu, 4 Feb 2010 21:36:21 -0800 |
| 694.partial.emlx | gigi jordan <gigijordan015@gmail.com> | Noele and Ronald Mele <meleancientart@optonline.net>,"gaywoodhouselaw@aol.com" <GayWoodhouseLaw@aol.com>,jmaybey@nyc.rr.com,meriamgardner33@gmail.com, atomback@milbank.com, dcoutreach@usdoj.gov, carlyn.mccaffrey@weil.cco, isteiner@akingump.com, dheyl@milbank.com, hhstips@oig.hhs.gov, mkoufakis@gmail.com | attention steve durham, Channing D. Phillips | Fri, 5 Feb 2010 00:02:52 -0800 |

Since the system log reflects that the Mail application was in use in and around this time, it appears that the messages may have been viewed by whoever was accessing the MacBook Air during the early morning of February 6, 2010, while the computer was in the custody of the NYPD.

STROZ FRIEDBERG

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

### 3. **Changes to Microsoft Office**

During my examination of the MacBook Air laptop, I observed that files related to the Microsoft Office 2008 application were modified at 3:21 a.m. and at 3:31 a.m. on February 6, 2010. The listing of recently accessed files reveals that a file named SW_DVD5_Office_Mac_2008_English_MLF_X14-18333.ISO, which appears to be the installation data for Microsoft Office 2008, from an external drive connected to the laptop. The external drive was named "64GB" and appears to have been connected at approximately 3:25 a.m.

To date, I have not been able to determine what changes, if any, were made to Microsoft Office on Ms. Jordan's MacBook Air and why they were made.

### 4. **The Usage of Ms. Jordan's MacBook Air after Her Arrest Changed Data**

The use of the Ms. Jordan's laptop on February 5 and 6, 2010 changed data as it appears that the computer was accessed by the NYPD without any digital forensic measures to prevent the alteration of data on the hard drive. The forensic evidence reflects:

    i.      one document and five email messages were modified and six additional messages were accessed during this period; and

    ii.     the opening of documents during the time period that the laptop was in the NYPD's custody caused information to be removed about Ms. Jordan's usage of the computer as records about Ms. Jordan's recent usage were overwritten in order to store the records pertaining to the NYPD's use of the computer.

The changes to the computer introduced as a result of the usage by the NYPD on February 5 and 6, 2010, may have resulted in the loss or alteration of relevant data.

Despite the fact that the MacBook Air was forensically imaged on three occasions, none of these images cures the changes that were introduced on February 5 and 6, 2010 when the laptop was in the NYPD's custody, because the images were created subsequent to this activity. The earliest forensic image, which would preserve a complete and accurate copy of the contents of the hard drive as of that moment in time, was created by the NYPD on July 22, 2010, more than five months after the arrest and the changes introduced on February 5 and 6, 2010.

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

### B. Questions About Data Provided by NYPD

#### 1. The 320 GB NYPD Drive Does Not Contain Readable Data

The 320 GB hard drive provided by the NYPD does not appear to contain any readable data.

Hard drive typically contain information in the first sector of the drive that computers use in order to determine how the information on the hard drive is organized so that the files and folders on the hard drive can be viewed by a computer user. As an example, below is a screenshot of how the 1 TB NYPD Drive, which does contain readable data, appears when viewed using EnCase Forensic Edition, a forensic utility that we use to examine drive.



As can be seen in the lower portion of the figure, the first sector contains information that the computer uses to identify where data is stored on the drive. Some of these data are binary data intended to be interpreted by the computer and some of these data are human readable and are intended to be displayed to a user if there is a problem booting the drive, e.g. the text "Invalid partition table" in the portion highlighted in yellow in the above figure. The left portion of the screenshot shows a listing of some of the folders that were identified on the drive.

Stroz Friedburg, Report of Digital Forensic Analysis, February 11, 2013

The below figure depicts the 320 GB NYPD Drive when viewed using forensic software:



In contrast to the 1 TB NYPD Hard Drive, the first sector of the 320 GB NYPD Drive does not appear to contain a valid partition table that would allow the data on the hard drive to be read. The left portion of the screenshot shows that no folders were identified on the drive. Furthermore, Stroz Friedberg did not identify readable data stored elsewhere on the drive. The data stored on the 320 GB NYPD Drive appears to be random data or zeroes.

It is possible that data is stored on the hard drive in an encrypted format, but Stroz Friedberg did not receive any passwords or other information about how to access the data on the hard drive if it is.

As such, significant questions remain regarding this device, including, but not limited to:

    i.    How does the 320 GB NYPD Drive relate to the Gigi Jordan matter?

    ii.    Is data stored on the 320 GB NYPD Drive in an encrypted format?

    iii.    If so, how can it be accessed?

    iv.    If not, what data was stored on the device? When was it removed? How was it removed?

## 2.  Questions About the 1 TB NYPD Hard Drive

As noted above, the 1 TB NYPD Drive contains forensic preservations that the NYPD made of Ms. Jordan's MacBook Pro and MacBook Air laptops, the BlackBerry assigned identified BB1, the two

Samsung mobile phones, and the Apple iPod Touch. However, these forensic preservations reside in the Trashes folder, which is the Macintosh equivalent of the Recycle Bin that stores files and folders that have deleted by the user but that have not yet been cleared from the hard drive. The below figure depicts the folders contained under the Trashes folder:



Based upon the last accessed metadata of the folders, the folders appear to have been deleted into the Trash on December 10, 2010 at approximately 4:17 p.m.

Although Stroz Friedberg was able to access the files stored within the Trashes folder, the Trashes folder is not, in my opinion, a customary storage location for data that one wants to retain, particularly digital forensic preservations. Given that, significant questions remain regarding this device, including, but not limited to:

i.   Why do the forensic preservations on the 1 TB NYPD Hard Drive reside in the Trashes folder?

ii.  Was there additional information that had resided on the 1 TB NYPD Hard Drive that was deleted from the drive?

iii. We observed folders on the hard drive that were empty and that were named similarly to folders in the Trashes folder that contained forensic preservations. For example, there is an empty folder named "R251888 Item # 1" on the drive. What did the empty folders contain?

iv.  The preservation of the MacBook Pro laptop was made on April 1, 2010. The preservation of the MacBook Air was made several months later on July 22, 2010. Is

⏐STROZ FRIEDBERG

there a reason that the MacBook Air was imaged later? Was an early preservation of the MacBook Air made? If so, where is that image now?

## V.    Conclusion

Stroz Friedberg found that the NYPD did not follow forensic best practices, thereby not properly preserving the data. As a result, data has been altered and additional data may have been lost. It is not possible to either ascertain the full extent of lost data, nor is it possible to recover all of the potentially lost data.

Michael F. McGowan

# EXHIBIT N

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY:  PART 82

------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,

-v-                                                                    Ind. 621-10

GIGI JORDAN,

                            Defendant.

------------------------------------------------------------------x

## NOTICE OF MOTION TO COMPEL ADA KERRY O'CONNELL TO COMPLY WITH THIS COURT'S DISCOVERY ORDERS AND TO STATE UNDER OATH THAT CERTAIN DISCOVERY IS COMPLETE

To:    District Attorney
        New York County
        Attn:  ADA Peter Casolaro
        Attn:  ADA Kerry O'Connell


PLEASE TAKE NOTICE:

Upon the annexed Affirmation of Ronald L. Kuby, and Exhibits filed

herewith, and all prior proceedings had herein, the undersigned will move

this Court, at 100 Centre Street, Part 82, at a time and date to be determined

by this Court, for an Order to compel ADA O'Connell to:

1. Comply with this Court's discovery orders, by providing all

additional subpoenas issued by the prosecution to the DOC for Ms.

Jordan's telephone recordings and/or call records that have not been

supplied to the defense.  In addition, the defense demands production

of all records and/or recordings that have not been supplied to the

defense.  These demands include, but are not limited to, subpoenas

issued and recordings and records of Ms. Jordan's telephone use

obtained after January 11, 2013, and in particular telephone

recordings or call records made by Ms. Jordan using book and case

numbers other than 7011000006.

2.  State, under oath, that to the best of her knowledge, information,

and belief, neither she nor anyone else in the Office of the District

Attorney, or the New York City Police Department, possess, has

possessed, has subpoenaed, or has had access or listened to any

recorded telephone conversations between Ms. Jordan and any of her

attorneys or other privileged parties Ms. Jordan made under Book and

Case numbers **other than** 7011000006, and that all subpoenas issued

and recordings obtained have been supplied to the defense and to the

Court;

3.  State, under oath, that to the best of her knowledge, information,

and belief, neither she nor anyone else in the Office of the District

Attorney, or the New York City Police Department, possess, has

2

possessed, has subpoenaed, or has had access to (other than the

subscriber information subpoenaed regarding attorney Michelle

Mitchell's telephone number) information related to the telephone

number of Ms. Jordan's attorney, Michelle Mitchell, or any of Ms.

Jordan's other attorneys' or privileged parties' telephone numbers.

Yrs., etc.

Ronald L. Kuby
119 West 23rd Street
New York, N.Y.  10011
(212) 529-0223


Michael G. Dowd
425 Park Avenue, 26th
Floor
New York, NY  10022
(212) 751-1640

*Attorneys for Defendant*

OF COUNSEL:
Alan M. Dershowitz




Dated:      New York, New York
            April 15, 2013



3

# EXHIBIT O

```
 1  SUPREME COURT            NEW YORK COUNTY
    CRIMINAL TERM            PART 82
 2  -------------------------------------x
    THE PEOPLE OF THE STATE OF NEW YORK  :  INDICTMENT #
 3                                          621/2010
                                         :
 4              -against-

 5                                       :  CHARGE:
    GIGI JORDON,                            MURD2
 6                                       :
                      Defendant.
 7  -------------------------------------x CALENDAR CALL

 8               100 Centre Street
                 New York, New York 10013
 9               September 4, 2013

10

11  B E F O R E:
                 HONORABLE CHARLES SOLOMON,
12               JUSTICE OF THE SUPREME COURT

13  A P P E A R A N C E S:

14

15      FOR THE PEOPLE:

16          CYRUS R. VANCE, JR. ESQ.,
            New York County District Attorney
17          BY:  PETER CASOLARO, ESQ.,
                 AARON GINANDES, ESQ.
18               Assistant District Attorneys

19
        FOR THE DEFENDANT:
20          MICHAEL DOWD, ESQ
            425 Park Avenue
21          New York, New York

22          RON KUBY, ESQ.
            119 West 23rd Street
23          New York, New York

24                       Kristine Martini,
                         Senior Court Reporter
25
```

PROCEEDINGS                                                                    7

1        then I have to decide it, which is years away.

2                 MR. KUBY:  As you have said no fewer than seven

3        times orally or in writing over the past two years, yes.

4                 THE COURT:  Does defense wish to raise anything

5        today?

6                 MR. KUBY:  The only thing that I want to mention

7        and it's properly speaking better since it's Mr. Casolaro's

8        issue to open with it.

9                 We did have a preliminary discussion outside about

10       some outstanding discovery matters and I don't know if Pete,

11       ADA Casolaro wants to address that.

12                THE COURT:  Nice to see you call your adversaries

13       by their first name.

14                MR. CASOLARO:  I don't think there is anything we

15       need to update the court with.  We're just trying to

16       complete discovery with ourselves.

17                THE COURT:  That's usually the way we like to take

18       care of these things, for lawyer to sit down and talk and

19       there's no court intervention, which is nice.

20                Again anything else the defense wants to raise?

21       MR. KUBY:  No.

22       THE COURT:  Mr. Casolaro?

23       MR. CASOLARO:  No.

24                THE COURT:  There's a letter that you discussed

25       altruistic fillicide which is the defense that's going to be

# EXHIBIT P

Letter, Ronald L. Kuby, September 30, 2013

# LAW OFFICE OF RONALD L. KUBY
### ATTORNEYS AT LAW
119 West 23rd Street, Suite 900
New York, New York 10011

TELEPHONE: (212) 529-0223
Fax: (212) 529-0644
WWW.KUBYLAW.COM

RONALD L. KUBY
———
GEORGE WACHTEL
LEA SPIESS
LEAH BUSBY

STAFF
SUSAN BAILEY
PROCESS SERVER
LUIS R. AYALA 1952-2012

September 30, 2013

Hon. Charles H. Solomon
Justice, Supreme Court, Part 82
100 Center Street
New York, NY
(By Hand)

Re:  People v. Gigi Jordan, 00621/2010

Dear Justice Solomon:

I am in receipt of ADA Casolaro's letter of September 26, 2013.

The most recent cause of delay, preventing even the setting of a trial date, is the need to privilege review the 14,051 telephone recordings finally received by the defense on June 24, 2013. As the Court will recall, the existence of the subpoenas for these recordings was hidden from the defense and from the Court, with ADA O'Connell twice lying to the Court about the existence of the subpoenas she had issued. Moreover, the recordings themselves, which were obtained by the prosecution on or about February 4, 2013, were not provided to the defense until over four months later. Indeed, their existence was concealed from the defense, and from the Court, until May 10, 2013. This misconduct is fundamentally at odds with the prosecution's protestations of their "desire to move this case to trial."

On September 25, 2013, I received a telephone call from ADA DeLozier, who informed me that she was sending several hundred pages of additional discovery. I have not yet received these items. Thus, I offer no opinion as to whether this additional discovery material will have been supplied in a timely manner when it arrives, nor whether such material will illustrate additional

1

violations of the prosecutions disclosure obligations under C.P.L. § 240.20, or of this Court's orders. I likewise have no opinion as to what a meeting with the prosecution to review discovery, as previously proposed by ADA Casolaro, will yield. I would comment that the surest way to achieve the prosecution's professed "desire to move this case to trial" is to provide the new discovery material that they have not furnished to the defense for the past 44 months and counting.

I will reiterate, however, that it seems impossible for this Court to decide the prosecutorial misconduct motion until outstanding discovery materials, recently referenced by the prosecution, are received and reviewed by the defense. For example, the Court cannot decide defense's motion to compel the prosecution to comply with this Court's discovery orders and to state under oath that discovery is complete when it is now manifestly clear that discovery is *not* complete.

The prosecution's current desire for piecemeal adjudication of the outstanding issues stands in sharp contrast to their persistent and vigorous objections to piecemeal adjudication. These objections were endorsed by the Court, which also repeatedly expressed its preference to adjudicate all of the outstanding issues in one decision.

Last, I was pleased to read that ADA Casolaro is proposing to supply Rosario material to the defense. I look forward to receiving it, as well as to receiving the outstanding discovery referenced by ADA DeLozier, and to meeting with the prosecution when they are available to review what else, if anything, is outstanding. The sooner these things can happen, the sooner the Court will be in the position to rule on everything at one time.

Sincerely,

Ronald L. Kuby

cc:     ADA Peter Casolaro (via email and U.S. mail)
        Alan M. Dershowitz
        Michael G. Dowd
        Gigi Jordan

2

# EXHIBIT Q

Transcript, October 4, 2013                                    1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF NEW YORK                    PART  82
     ----------------------------------------
3    THE PEOPLE OF THE CITY OF NEW YORK          Indict. No.
                                                  0621/2010
4

5                    -VS-

6

7    GIGI JORDAN, DEFENDANT                      Cal. Call
     ----------------------------------------
8                              October 4, 2013
                               100 Centre Street
9                              New York County

10   B E F O R E:

11                      HONORABLE CHARLES H. SOLOMON
                        JUSTICE OF THE SUPREME COURT
12

13   A P P E A R A N C E S:

14   FOR THE PEOPLE

15                      Cyrus R. Vance, Jr.
                        District Attorney
16                      One Hogan Place
                        New York, New York
17                      By: MATTHEW BOGDANOS
                            MERIT DELOZIER
18                          AARON GINANDES
                        Assistant District Attorney
19

20   FOR THE DEFENDANT

21                      RONALD KUBY
                        119 West 23rd Street
22                      New York, N.Y.

23                      ALAN DERSHOWITZ
                        New York, N.Y.
24

25                          AMALIA HUDSON
                        OFFICIAL COURT REPORTER

## PROCEEDINGS

1   actually sign a statement under oath, or, indeed, at all

2   saying it's been done.  Because it hasn't been done.

3       A.D.A. Casolaro said it hasn't been done.  You know,

4   we're going to have you in.  You will sit down in a room with

5   everything that we think you should have.  You will go

6   through it.  Anything you don't have, it's yours.

7       That meeting didn't happen for medical reasons.  I spoke

8   to A.D.A -- I think I actually spoke -- Yes.  A.D.A. Deloizer

9   called me by phone, and said look she's got -- I believe she

10  characterized it as several hundred pages of things we should

11  be getting.  We discussed how we could get them. I said for

12  now just go ahead scan it and send.  We didn't get it.  So

13  it's not as though we don't -- Sorry.  Did you send it?

14          MR. BOGDANOS:  Don't answer that.

15          THE COURT:  Why don't you --

16          MR. KUBY:  I didn't get it, and I think I indicated

17  in my letter that I didn't get it.  So it's not as though we

18  don't want a decision on the motion.  What we want to do is

19  continue with what both the prosecution and the Court have

20  agreed to largely at the prosecutor's requested that we're

21  not going go have piecemeal adjudication for all outstanding

22  issues. I just want the discovery that we are now entitled

23  to, and I want somebody from the New York County A.D.A.

24  District Attorney office to sign a piece of paper saying this

25  is what you get and here it is respectfully affirmed, fill in

Transcript, October 4, 2013                                    18

**PROCEEDINGS**

1   say, and maybe this is just naivety, I am confident we're not

2   going to have any issues on the calls.  Can we just table

3   that so that I can focus on everything else other than the

4   discovery.  I will come back here.

5            THE COURT:  One at a time.

6            MR. BOGDANOS:  If we don't have -- if both sides

7   aren't completely satisfied with how we resolve the Riker's

8   calls, I will come back here and say mia culpa, my fault, and

9   I will apologize.  I don't want to waste any time on the

10  Riker's calls because I think ultimately between us I think

11  it's going to be a non-issue.

12           MR. DERSHOWITZ:  Your Honor, that seems right.

13  They now have, as I am advised, 73 privilege calls.  We would

14  just like them to turn those 73 privileged calls, everything

15  they have regarding them, the recording to us so that they

16  don't have them in their possession.

17           THE COURT:  Okay. That is your request.  Anything

18  else?

19           MR. BOGDANOS:  No.  In order to answer Mr. Kuby's

20  question if I -- if I -- I only promise things I know I can

21  guarantee, and tomorrow is promised to no one, of course, but

22  I am not giving you a date not for being contumacious.  I

23  don't know enough.  I would say a month. It could be sooner.

24      What I would like is to do is just take a week, kind of

25  assess where we are, and get up -- it may be by significantly

**PROCEEDINGS**

1  faster than a month.  I just don't know, so I am not being

2  silent because I am being obstreperous.  I am being silent

3  because I am ignore.  What the answer to that question is,

4  but it will be, Quote me, fast and feverous.

5          MR. KUBY:  I would never argue with ignorance.

6  It's fine.

7          THE COURT:  Let me say this.  I would like to

8  decide this motion.  This is an outstanding motion which I've

9  had motion, response, reply, letters about it. I would like

10  it decide this motion in November, and I have to seriously

11  start thinking as I've been thinking for the last year about

12  a trial date.  We have to concentrate on that as well.

13          MR. BOGDANOS:  First week of January would be

14  great.

15          THE COURT:  The first week of January would be

16  great for me too.

17          MR. KUBY:  Your Honor, I appreciate that, but that

18  is just -- sorry. A.D.A. Bogdanos needs a week to just see

19  what he has, to see what has been turned over and what hasn't

20  been turned over which is one piece of this giant cube, and

21  now he wants to set a January trial date which is just not

22  realistic.

23          MR. BOGDANOS:  One can hope.  I am getting my hopes

24  step on.  One can hope.

25          MR. KUBY:  I am sorry. I hate to steps on your

# EXHIBIT R

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:CRIMINAL TERM
        PART: 82
----------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

                                  Indictment
        -against-                   No. 621/10

GIGI JORDAN,
                 Defendant.
----------------------------------------------X
                          100 Centre Street
                          New York, NY 10013
                          October 28, 2013

BEFORE:  HONORABLE CHARLES SOLOMON, JUSTICE

  A P P E A R A N C E S:

    For the People:

        CYRUS R. VANCE, JR., ESQ.
        District Attorney, New York County
        One Hogan Place
        New York, NY 10013
        BY:  MATTHEW F. BOGDANOS, ESQ.
            AARON GINANDES, ESQ.
            MARIT DELOZIER, ESQ.

    For the Defense:

        MICHAEL G. DOWD, ESQ.
        425 Park Avenue
        New York, NY 10022

        RONALD L. KUBY, ESQ.
        119 West 23rd Street
        Suite 900
        New York, NY 10011

        ALAN M. DERSHOWITZ, ESQ.
        Hauser Hall 520
        1575 Massachusetts Avenue
        Cambridge, MA 02138

             LAURIE EISENBERG, C.S.R., R.P.R.
             Senior Court Reporter

1    etcetera.

2              No argument today. Just that group.

3              And then, third, for lack of a better way of

4    putting it, the justification issue, the benign-sounding

5    altruistic filicide issue. Call it duress. Call it

6    emergency. Call it what you will. I call it, as just a

7    catchall, "the justification".

8              Those three issues are, effectively, holding,

9    really, both sides hostage to preventing us from going

10   forward.

11             I know this is not the time to argue it. I'm not

12   going to.  I know this is not the time to talk about it.

13             I just want to put that on the table so when we

14   finally do resolve these other issues and Your Honor

15   rules on the motion, we can then say: Okay. Now what?

16   Let's get a hearing two weeks from now. Let's get a

17   hearing on this in two weeks. Two weeks from now let's

18   get a hearing on that. So we can always be moving

19   forward.

20             THE COURT:  Counsels, anything further from the

21   defense?

22             MR. KUBY:  I will agree not for the first or

23   last time with ADA Bogdanos, this is not the time to

24   discuss those things. We are a ways from that.

25             THE COURT:  Those are issues that will have to

Proceedings

1      be discussed, possibly briefed. We'll discuss that when

2      the proper time comes.

3              You said about four weeks.

4              Let me say what's going to happen on the next

5      adjourn date. I would like to, if possible, have a

6      decision on the outstanding motion.

7              But, I think the defense doesn't want me to. Is

8      that correct?

9              MR. KUBY:  Well, I don't think that we can do

10     that in an accurate and comprehensive way.

11             I mean, I would like to have the other things

12     that had happened in this case earlier than they're

13     happening now.

14             It's not a matter of I don't want it done. I

15     think it shouldn't be done until we have a chance to file

16     whatever supplemental we're going to file based on --

17             THE COURT:  That additional supplemental will be

18     filed when --

19             MR. KUBY:  When I have a chance to look over

20     what I have to characterize as the quarter million

21     documents, I'll be able to give you some sense of what,

22     if anything, I am going to file based on what I have been

23     given and will be given that I haven't had a chance to

24     look at.

25             THE COURT:  On the next date, you'll have looked

Transcript, Oct. 28, 2013
Proceedings

1   at everything. On the next date, Professor Dershowitz

2   will have his papers in on the phone calls. On the next

3   date, I won't have a decision on the motion, and you'll

4   tell me if there's anything else you want to file.

5            MR. KUBY:  That's the hope, the expectation.

6            THE COURT:  We're at the end of November now.

7            MR. KUBY:  That's correct.

8            THE COURT:  So, the January trial date

9   Mr. Bogdanos is seeking, what do you have to say about

10  that?

11           MR. KUBY:  It, obviously, based on the little

12  we've heard today, is completely and utterly unrealistic.

13           I understand why he wants it, because it looks

14  good on the record for other purposes, saying: We want to

15  go to trial, we want to go to trial, we want to go to

16  trial.

17           But, if you want to go to trial based upon

18  what -- starting from -- starting anew today, that's

19  great.

20           But, unfortunately, as I said at the last court

21  appearance, so many of us want to escape the past, but we

22  just can't do it.

23           I think after the next court appearance, after

24  we've had a chance to look at discovery, after we finish

25  this phase, the discovery phase, then I think we can

Proceedings

1    probably have a discussion about other things that need

2    to be done and then the trial day.

3         Right?

4         THE COURT:  Well, those three topics that he

5    raised today, we have to discuss them in detail.

6         MR. KUBY:  That's right.

7         THE COURT:  That will be done in December.

8         MR. KUBY:  I think that would certainly be the

9    beginning of that process.

10        THE COURT:  Okay. The beginning of that process.

11   Okay. Fine.

12        Let's do this. Let's set a date for the next

13   appearance. We have the reasons for that appearance.

14        Mr. Dowd, anything you want to say? You've been

15   very quiet today.

16        MR. DOWD:  Saving myself.

17        THE COURT:  How about Friday, November 29th?

18        MR. KUBY:  That's the day after Thanksgiving.

19        THE COURT:  You don't want to be here that day?

20   I'm going to be here. I just wanted to see you get

21   excited about that day.

22        MR. KUBY:  I will get excited on behalf of

23   everybody who has family.

24        THE COURT:  I just wanted to see your reaction.

25        MR. KUBY:  You saw it.

Laurie Eisenberg, CSR, RPR
Senior Court Reporter

# EXHIBIT S

JUDGE TORRES

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

13 CIV 5519

| | |
|---|---|
| RAYMOND A. MIRRA, JR., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. _____ |
| ) | |
| v. ) | ECF Case |
| ) | |
| GIGI JORDAN, ) | TRIAL BY JURY DEMANDED |
| ) | |
| Defendant. ) | |

RECEIVED
AUG 0 7 2013
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiff Raymond A. Mirra, Jr., ("Mr. Mirra"), as and for his Complaint against
Defendant Gigi Jordan ("Ms. Jordan"), by and through undersigned counsel, hereby alleges as
follows:

## NATURE OF THE ACTION

1.      This is a suit to repair the public image and restore the private life of Raymond A.
Mirra, Jr., both of which have been damaged by outrageously false and defamatory statements
made by Gigi Jordan to a reporter for the *New York Daily News*.  As detailed below, Mr. Mirra's
reputation and privacy are victims of Ms. Jordan, who is currently incarcerated pending trial for
the murder of her own son.  Indeed, on information and belief, Ms. Jordan made the slanderous
remarks at issue for the very purpose of advancing her defense in that criminal case and despite
the fact that Mr. Mirra has provided support and assistance to her and her son for many years.

## THE PARTIES

2.      Mr. Mirra is a citizen and resident of Pennsylvania, a successful, self-made
business executive, and owner of numerous companies.  An entrepreneur by inclination, Mr.

1

Mirra hired Mr. Tzekov, Ms. Jordan's former husband and the biological

father of Jude, only at Defendant Jordan's express request, as she wanted Mr.

Tzekov to help care for her and Jude.

c. "By hiring Emil, he was trying to drive me into a nervous breakdown." This

statement is false because Mr. Mirra did not hire Mr. Tzekov to "drive [Ms.

Jordan] into a nervous breakdown." In fact, Mr. Mirra hired Mr. Tzekov,

Defendant Jordan's former husband and the biological father of Jude, only at

Defendant Jordan's express request. Mr. Mirra never had reason to believe

that hiring Mr. Tzekov would be the cause of any "nervous breakdown."

d. "Ray kept Emil, whom Jude was terrified of, around to try to drive me crazy.

To worry that my son would be raped and tortured. . . ." This statement is

false because Mr. Mirra did not "keep" Mr. Tzekov "around" in order to

"drive [Ms. Jordan] crazy." In truth, Mr. Mirra hired Mr. Tzekov only at

Defendant Jordan's express request. Mr. Mirra never had reason to believe

that Mr. Tzekov's presence would cause Defendant Jordan to worry that he

would rape or torture Jude.

e. "Ray was looting me, forging millions in bank transfers and withdrawals from

my banks." This statement is false because Mr. Mirra did not "forg[e]

millions in bank transfers [or] withdrawals" or "loot" Ms. Jordan, nor did he

steal from Defendant Jordan or institute any unauthorized wire transfers or

withdrawals from her bank accounts.

f. "[Mr. Mirra had] close ties to the ruthless Philadelphia mob." This statement

is false because Mr. Mirra does not have any close personal or professional

15