UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

Gigi Jordan,
                          Plaintiff,


-v-                                              12 Civ. 1742 (KBF)


Raymond A. Mirra, Jr.,
                          Defendant.
-----------------------------------------------------------x



**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO LIFT
STAY OF PROCEEDINGS**




Allan L. Brenner (ALB5018)
536 West Penn Street – 2nd Floor
Long Beach, New York 11561
516-897-6145
brenner.allan@yahoo.com

*Attorney for Plaintiff*



Dated:  New York, NY
              November 8, 2013

**Table of Contents**

INDEX TO EXHIBITS ....................................................................................**iii**

TABLE OF CASES AND AUTHORITIES ..........................................................**iv**

SUMMARY OF ARGUMENT ........................................................................ **1**

STATEMENT OF FACTS ............................................................................ **3**

    A.   Prosecutorial Misconduct Regarding Subpoenas and Telephone
            Recordings that Forced the Adjournment of the September 16, 2013
            Trial Date. .................................................................................... **4**

    B.   Discovery and Inspection of the Electronic Devices ................................ **9**

    C.   The Current Status of Discovery and Proceedings .................................. **11**

    D.   Mirra's Defamation Action Against Ms. Jordan ..................................... **13**

ARGUMENT ............................................................................................. **15**

    I.   THE PROSECUTION'S MISCONDUCT, PREVENTING MS.
           JORDAN'S  TRIAL IN A TIMELY MANNER, COUPLED WITH
           MIRRA'S LAWSUIT AGAINST MS. JORDAN, CONSTITUTE
           CHANGED  CIRCUMSTANCES WARRANTING LIFTING OF THE
           STAY. .......................................................................................... **15**

CONCLUSION ........................................................................................... **20**

**INDEX TO EXHIBITS**

Exhibit A:   Decision and Order, August 2, 2013

Exhibit B:   Email, ADA Kerry O'Connell, Nov. 26, 2010

Exhibit C:   Transcript, April 13, 2012

Exhibit D:   Transcript, Nov. 16, 2012

Exhibit E:   Letter, ADA Kerry O'Connell, Nov. 29, 2012

Exhibit F:   Transcript, Nov. 30, 2012

Exhibit G:   Subpoenas, Dec. 6, 2013

Exhibit H:   Letter, Hon. Charles H. Solomon, Dec. 10, 2012

Exhibit I:   Letter, ADA O'Connell, Dec. 12, 2012

Exhibit J:   Transcript, Dec. 14, 2012

Exhibit K:   Transcript, Jan. 11, 2013

Exhibit L:   Transcript, Sept. 7, 2012

Exhibit M:   Stroz Friedberg, Report of Digital Forensic Analysis in: The People of the State of New York v. Gigi Jordan, Feb. 11, 2013

Exhibit N:   Notice of Motion, Ronald L. Kuby, April 15, 2013

Exhibit O:   Transcript, Sept. 4, 2013

Exhibit P:   Letter, Ronald L. Kuby, Sept. 30, 2013

Exhibit Q:   Transcript, Oct. 4, 2013

Exhibit R:   Transcript, Oct. 28, 2013

Exhibit S:   Mirra v. Jordan, 13 Civ. 5519 (AT) (S.D.N.Y. 2013)

# TABLE OF CASES AND AUTHORITIES

## Cases

Campbell v. Eastland,
307 F.2d 478 (5th Cir. 1962) ......................................................... 16

City of New York v. Gutlove & Shirvint, Inc.,
2008 U.S. Dist. LEXIS 91016 (E.D.N.Y. 2008) .......................... 19

In re Air Cargo Shipping Services Antitrust Litigation,
2010 U.S. Dist. WL 5027536 (E.D.N.Y. 2010)............................. 19

 Louis Vuitton Malletier S.A. v. LY USA, Inc.,
 676 F.3d 83 (2d Cir. 2012) ....................................................15-16

Marria v. Turitto,
1995 U.S. Dist. LEXIS 22218 (E.D.N.Y. 1995) .......................... 19

 Mirra v. Jordan,
13 Civ. 5519 (AT) (S.D.N.Y. 2013) ................................. 1-2, 13-14

Securities and Exchange Commission v. Oakford Corp.,
 181 F.R.D. 269 (S.D.N.Y. 1998) .................................................. 16

Securities and Exchange Commission v. One or More Unknown
Purchasers of Securities of Global Industries, LTD.,
2012 U.S. Dist. WL 5505738 (S.D.N.Y., Nov. 9, 2012) ........................ 16, 18

Securities and Exchange Commission v. Treadway,
2005 U.S. Dist. LEXIS 4951 (S.D.N.Y. 2005)............................. 19

Trustees of the Plumbers and Pipefitters
National Pension Fund v. Transworld Mechanical,
886 F.Supp. 1134 (S.D.N.Y. 1995) ......................................................17-19

## **Authorities**

N.Y.C.P.L. § 30.30 ........................................................................... 18

N.Y.C.P.L. § 240.20 ....................................................................... 9,13

## **Other**

Kitty Caparella, Edward Moran, Ann W. O'Neill, *The No. 3 Man in a Deadly Business*, Philadelphia Daily News, Sept. 17, 1984 ..................................... 15

Maria Gallagher, *DA Calls 6 to Back Up 'Crow's' Story*, Philadelphia Daily News, April 19, 1988 ................................................................... 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

Gigi Jordan,
                              Plaintiff,


-v-                                                    12 Civ. 1742 (KBF)


Raymond A. Mirra, Jr.,
                              Defendant.
----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO LIFT STAY OF PROCEEDINGS


### SUMMARY OF ARGUMENT

On May 17, 2012, this Court stayed all proceedings in the above-entitled matter pursuant to the request of Defendant Raymond A. Mirra Jr. (hereinafter Mirra) and intervenor District Attorney, New York County (hereinafter DANY).   In the ensuing seventeen months, two factors have changed which tilt the "delicate concerns related to balancing" in favor of permitting the instant action to proceed (Mirra v. Jordan, 13 Civ. 5519 (AT) (S.D.N.Y. 2013).  First, Plaintiff Gigi Jordan's criminal trial has not commenced within a reasonable period of time.  Indeed, the trial has been postponed indefinitely.  The undisputed cause of the *sine die* adjournment of the September 16, 2013 trial date was the dilatory tactics of intervenor DANY, in withholding, for months,

1

14,051 subpoenaed tape recordings that the defense was required to review for privileged conversations.  (Decision and Order, August 2, 2013; Exhibit A). Although ADA O'Connell has been removed from the case, and a new ADA assigned, the wreckage wrought by the former over almost four years continues to impede forward progress of the case to trial.

Second, Mirra has commenced a civil action against Ms. Jordan for defamation, "false light invasion of privacy," and "intrusion upon seclusion" in the Southern District of New York.  (Mirra v. Jordan, 13 Civ. 5519 (AT) (S.D.N.Y. 2013)).  The 130-paragraph complaint is based exclusively on extra-judicial statements made by Ms. Jordan in which she repeats the allegations of misconduct she made in her civil action for fraud.  The issues raised by Ms. Jordan in her civil action, and by Mirra in his civil action, not only overlap, they are coterminous.  Mirra has thus used this Court's stay as a shield to protect him from answering Ms. Jordan's claims, while using the processes of this Court as a sword to mulct Ms. Jordan in damages by asserting her stayed-claims are false.

Notably, the Mirra civil action was filed on August 7, 2013, and intervenor DANY has not moved to stay that action.  The purported risk that Jordan will gain evidence in the civil case to which she is not entitled to in the criminal case, which formed the basis of the motion for a stay and this Court's

2

granting thereof, apparently is no longer a concern, if it ever was.  Despite the

identity of issues between the two civil actions, Mirra and DANY are concerned

only with Ms. Jordan's possible recovery of damages against Mirra, and have

wrongfully invoked this Court's authority to disadvantage one party to a civil

dispute.

Accordingly, the stay should be lifted.


## STATEMENT OF FACTS

On March 9, 2012, Jordan filed the instant civil action against Mirra.

DANY moved for leave to intervene and for a stay pending conclusion of the

criminal case against Ms. Jordan, and Mirra filed a Response in support of

DANY's motion.

On May 17, 2013, this Court stayed all proceedings, but directed DANY

to provide updates of the status and progress of Ms. Jordan's criminal case

every 90 days.

As noted in the submission to this Court made by Ms. Jordan's criminal

defense counsel over fourteen months ago, upon receiving the stay the erstwhile

lead prosecutor "engaged in an astonishing pattern of obstruction, delay,

serving papers without filing, filing papers without serving, and tardy filing that

has actually set us back further than we were on May 17, 2012."  (Letter,

3

Ronald L. Kuby, Sept. 5, 2012, at 3; Document 25).  The pattern of obstruction

and delay has continued, ultimately requiring the adjournment of the September

16, 2013 trial date referenced in DANY's May 23, 2013, and September 26,

2013 letter.


A.    Prosecutorial Misconduct Regarding Subpoenas and Telephone
      Recordings that Forced the Adjournment of the September 16, 2013
      Trial Date.

      In November of 2010, the defense and the trial court learned that the

Department of Corrections, on numerous occasions, had recorded calls made by

Ms. Jordan to her attorneys.  Moreover, the prosecution had both subpoenaed

these recordings and had listened to them.  (Email, ADA Kerry O'Connell,

Nov. 26, 2010; Exhibit B).

      On September 29, 2011, the prosecution provided to the defense 1,020 of

Ms. Jordan's recorded calls for a privilege review by the defense prior to the

prosecution listening to any additional recordings.  The privilege review took

several months and the defense found that of the 1,020 calls subpoenaed by the

prosecution, 684 were privileged.  The trial court ordered that all of the

defendant's recorded calls subpoenaed by the prosecution must be provided to

the defense for privilege review, prior to the prosecution being permitted to

listen to them.  (Tr., April 13, 2012, at 12, 14-15; Exhibit C; Tr., Nov. 16, 2012, at 31-32; Exhibit D).

After discovering that the prosecution had continued to subpoena the recorded calls of the defendant, without providing them to the defense for privilege review before listening to them, the trial court ordered that:  "On or before November 30, I would like to see *all* of the subpoenas the DA's Office issued [to the DOC] and I would like to see what the DA's office received in response to those subpoenas." (Tr., Nov. 16, 2012, at 6; Exhibit D) (emphasis added).

On November 29, 2012, the trial court received the prosecution's production of the DOC subpoenas. (Letter, ADA Kerry O'Connell, Nov. 29, 2012; Exhibit E).  On November 30, 2012, the trial court reiterated its ruling stating:  "I will review everything, I want to make sure that each side has the same calls.  I want to make sure the DA's office has no privileged conversations…." (Tr., Nov. 30, 2012, at 5; Exhibit F).

On December 6, 2012, the prosecution issued *three new subpoenas* to the DOC for the Ms. Jordan's telephone recordings and did not inform the trial court or the defense.[1] (Subpoenas, Dec. 6, 2013; Exhibit G).

---

[1] The new subpoenas were issued in the name of the "People of the State of New York against GIGI JORDAN," and were returnable on December 14, 2013.  The prosecution subpoenaed all telephone recordings made under the book and case numbers of eleven

On December 10, 2012, the trial court sought clarification regarding, among other things, the duplication of many of the subpoenas provided by the prosecution on November 29, 2012. (Letter, Hon. Charles H. Solomon, Dec. 10, 2012; Exhibit H).

Two days later ADA O'Connell responded:

> We produced all subpoenae in our files, whether we believed them to have been submitted to DOC or merely stray copies or unsent copies, because the Court requested that we supply it with all of the subpoenae in our files. We erred, in other words, on the side of producing all documents.

> (Letter, ADA O'Connell, Dec. 12, 2012; Exhibit I) (emphasis added).

This statement was false.  ADA O'Connell knew on the day she wrote this letter to the trial court that she had issued three new subpoenas for more of the Ms. Jordan's recorded calls and those subpoenas had not been produced to the trial court or to the defense.

The existence of the new subpoenas, and the calls received by the prosecution in response, would not be disclosed to the trial court or the defense for another *five months*.

At the December 14, 2012 appearance, the trial court repeated its earlier Order:

---

inmates, whose book and case numbers Ms. Jordan had used to make phone calls to, in nearly all cases, her attorneys.  Ms. Jordan had used the numbers of other inmates to avoid the prospect that the prosecution would subpoena and listen to her attorney calls, as it had previously and repeatedly done before, despite the trial court's orders that it not do so.

6

> What I want to make sure again is that everything the People have received from the Department of Corrections in response to their subpoenas I know about, what they have and the defense has exactly the same thing….I just want to know what the prosecution has and what the defense had and make sure they have the same thing.

(Tr., Dec. 14, 2012, at 20-21; Exhibit J).

The prosecution did not disclose its issuance of the December 6, 2012 subpoenas at this court appearance either.

On January 4, 2013, the prosecution, at the direction of the trial court, turned over to the defense what it purported to be all of the subpoenas issued to the DOC for Ms. Jordan's recorded calls.  But the prosecution, once again, did not provide the December 6, 2012 subpoenas.

On January 11, 2013, the trial court set a trial date for September 16, 2013.  (Tr., Jan. 11, 2013, at 21-22; Exhibit K).

The defense, endeavoring to ensure that all outstanding discovery was complete, asked the prosecution whether it had obtained any telephone recordings that Ms. Jordan might have made using the book and case numbers of other inmates. The following colloquy ensued:

> DEFENSE COUNSEL:   [D]oes the DA's office have or have access to or have heard…calls that Ms. Jordan made…on other people's PIN[2] numbers?...

---

[2] Abbreviated term for book and case numbers.

7

| | |
|---|---|
| THE COURT: | I know what you are asking…other than what the defense has been given…You don't have anything in addition to what you've given over to the defense? |
| ADA O'CONNELL: | No, your honor. |

(Id. at 8).  These statements by the prosecution were false.  The prosecution possessed the December 6, 2012 subpoenas that were issued to the DOC for more recordings.

On or about February 4, 2013, the DOC complied with the subpoena and provided 14,051 recordings to the prosecution.  The prosecution did not inform the defense, or the trial court, of the existence of these recordings until May 10, 2013.

On June 24, 2013, the telephone recordings, fruits of the three December 6, 2012 subpoenas were finally provided to the defense.  The defense informed the trial court that it would be impossible to review the 14,051 newly received recordings by the September 16, 2013, trial date previously set, and, accordingly, the trial court adjourned the trial, *sine die*.  As of this writing, 176 privileged calls have been identified among the calls obtained and withheld by the prosecution for 5 months, in defiance if the trial court's order.  The privilege review is on-going.

8

In its August 2, 2013 decision denying bail, the trial court left no doubt that the prosecution was to blame for this delay:

> [T]he subpoenas [the prosecution] issued in December of 2012 to the Department of Correction were not made known to defense counsel until several months later. Because of that, defense counsel have been delayed in their review of the thousands of phone conversations the People have in their possession, which the defense should have been given much earlier.

(Decision and Order, Aug. 2, 2013 at 2; Exhibit A).

On October 29, 2013, the new prosecutor, attempting to undo some of the damage of his predecessor, announced that he would eschew all use of these recordings. This concession, while welcomed by the defense, has not meaningfully advanced the pace of the litigation. The defense must still review the privileged recordings that the erstwhile prosecutor wrongfully concealed in order to move for appropriate relief based upon invasion of the attorney-client privilege.

B.     Discovery and Inspection of the Electronic Devices

Mr. Kuby's letter to this Court of September 5, 2012 addressed the extraordinary length it had taken the prosecution to comply with their N.Y.C.P.L. §240.20 obligations regarding Ms. Jordan's electronic devices, and the seemingly inexplicable obstructions by ADA O'Connell to the defense's

9

statutory right to inspect and test the electronic devices seized from Ms. Jordan. The prosecution took two years to provide the defense with what it purported to be two mirrored hard drives containing the data within the computers seized from Ms. Jordan by the NYPD.  One of the mirrored drives provided did not contain the data as reported, and the other was encrypted making the data inaccessible.  A third mirrored drive was provided by the prosecution on January 24, 2012, containing the contents of only one of the computers.  Over the strenuous objections of the prosecution, on September 7, 2012, the trial court ruled that the defense was entitled to conduct an inspection and testing of the devices. (Tr., Sept. 7, 2012, at 3-4; Exhibit L).

The inspection and forensic examination was conducted on December 5 and 6, 2012, by Stroz Friedberg, LLC, the computer forensic experts hired by the defense.  As a result, Stroz Friedberg documented in its forensic report, among other things, that:

> The use of the Ms. Jordan's laptop on February 5 and 6, 2010 changed data as it appears that the computer was accessed by the NYPD without any digital forensic measures to prevent the alteration of data on the hard drive. The forensic evidence reflects:
>
>> i. one document and five email messages were modified and six additional messages were accessed during this period; and
>>
>> ii. the opening of documents during the time period that the laptop was in the NYPD's custody caused information to be removed about Ms. Jordan's usage of the computer as records about Ms. Jordan's recent usage were overwritten in order to store the

10

> records pertaining  to the NYPD's use of the computer….
>
> Stroz Friedberg found that the NYPD did not follow forensic best practices, thereby not properly preserving the data. As a result, data has been altered and additional data may have been lost. It is not possible to either ascertain the full extent of lost data, nor is it possible to recover all of the potentially lost data.

(Stroz Friedberg, Report of Digital Forensic Analysis in: The People of the State of New York v. Gigi Jordan, Feb. 11, 2013, at 8, 12; Exhibit M).

The defense filed a motion with the trial court to suppress the data contents and for related relief on February 15, 2013.  The prosecution did not supply an expert report, or any affidavits or other evidentiary items disputing the Stroz Friedberg report and its findings.  That motion is still *sub judice* before the trial court.

C.     The Current Status of Discovery and Proceedings

On April 15, 2013, the defense moved for an order compelling *inter alia*, the prosecution certify, under oath, that all subpoenas, telephone recordings and records obtained--under any book and case number - be "supplied to the defense and to the Court." (Notice of Motion, Ronald L. Kuby, April 15, 2013; Exhibit N).

The prosecution stated that it would reply to this motion on June 21, 2013, as part of their answer to the omnibus prosecutorial misconduct motions.

11

The prosecution did not do so.  Indeed, the prosecution has not answered the

motion to date, and it remains *sub judice* before the trial court.

At least one reason for the prosecution's unwillingness to certify that

discovery had been completed became evident on September 4, 2013, when

ADA Peter Casolaro informed the defense and the trial court that discovery was

*not* complete.  (Tr., Sept. 4, 2013, at 7; Exhibit O).  ADA Casolaro suggested a

meeting wherein the defense would be afforded the opportunity to ascertain

what material may still be outstanding.  Further, on September 25, 2013, ADA

Marit DeLozier informed the defense that she would be sending several

hundred pages of discovery documents to the defense, which the defense did

not receive.  (Letter, Ronald L. Kuby, Sept. 30, 2013; Exhibit P; Tr., Oct. 4,

2013, at 7; Exhibit Q).

On October 4, 2013, ADA Casolaro withdrew from the case.  The new

lead prosecutor, ADA Matthew Bogdanos reported that he would need

additional time to ascertain what discovery was still outstanding.  (Tr., Oct. 4,

2013, at 18-19; Exhibit Q).

On October 29, 2013, ADA Bogdanos provided 200,000 documents he

deemed relevant to the Jordan case.  He further acknowledged that there were

12

more documents he intended to provide, and these would be provided within two weeks.  To date, there has been no further submission.

It is not possible to set a meaningful trial date until discovery is complete, the consolidated defense motions outstanding since April 15, 2013 are decided, and the prosecution concludes its motion practice, which will not begin until sometime next year.  (Tr., Oct. 28, 2013, at 32-35; Exhibit R).  In addition, the trial court has yet to decide a defense motion for dismissal of the indictment or other relief related to prosecutorial misconduct including, *inter alia*, the loss or destruction of exculpatory evidence, non-arraignment of the defendant on the criminal complaint, and breach of the attorney client privilege.  The trial court awaits the prosecution's completion of its N.Y.C.P.L. § 240.20 discovery obligation to rule on this motion. Evidentiary hearings will likely follow.

D.   Mirra's Defamation Action Against Ms. Jordan

On August 7, 2013, Mirra filed a 40-page, 130 paragraph civil action against Ms. Jordan, accusing her of defamation, "false light invasion of privacy," and "intrusion upon seclusion" in the Southern District of New York. (Mirra v. Jordan, 13 Civ 5519 (AT) (S.D.N.Y. 2013).  The complaint demands damages as well as injunctive relief.

13

The statements purportedly made by Ms. Jordan that Mirra claims are false and defamatory are substantively identical to the allegations Ms. Jordan made in her lawsuit against Mirra.  For example, Mirra alleges that Ms. Jordan stated "Ray was looting me, forging millions in bank transfers from my banks." (Exhibit S, at p. 15, para. 66(e)).  In her civil action against Mirra, Jordan sets forth the identical allegations at greater length.

In his civil action, Mirra asserts "[t]his statement is false because Mr. Mirra did not 'forg[e] millions in bank transfers [or] withdrawals or 'loot' Ms. Jordan, nor did he steal from Defendant Jordan or institute any unauthorized wire transfers or withdrawals from her bank accounts."  (Id.)  Mirra seeks damages in the action before Judge Torres, claiming that Ms. Jordan's statements are false.  But Mirra, with the assistance of DANY, secured an Order from this Court staying discovery by Ms. Jordan, impeding her from proving that her statements are true while her claims against Mirra for damages grow stale.

Indeed, now that this Court has stopped Jordan from proceeding against Mirra on any of her claims, Mirra has been emboldened to file a lawsuit filled with the most full-throated declarations of probity.  Mirra now denies the existence of any close ties to the Philadelphia mob, despite his public statements that he was a confidante of the late Salvatore Testa; a capo in the

14

Bruno-Testa-Scarfo crime family who was murdered as part of the internecine war within the Philadelphia mob.  (See Kitty Caparella, Edward Moran, Ann W. O'Neill, *The No. 3 Man in a Deadly Business*, Philadelphia Daily News, Sept. 17, 1984; Maria Gallagher, *DA Calls 6 to Back Up 'Crow's' Story*, Philadelphia Daily News, April 19, 1988).  Mirra, without interference from DANY, thus uses this Court's stay to prevent Ms. Jordan from proving her allegations and holding him accountable, while he simultaneously uses the processes of the federal court to seek damages, while attacking Ms. Jordan as a liar.

## ARGUMENT

I.   THE PROSECUTION'S MISCONDUCT, PREVENTING MS. JORDAN'S TRIAL IN A TIMELY MANNER, COUPLED WITH MIRRA'S LAWSUIT AGAINST MS. JORDAN, CONSTITUTE CHANGED CIRCUMSTANCES WARRANTING LIFTING OF THE STAY.

In granting the DANY/Mirra motion to stay over seventeen months ago, this Court acknowledged that its decision was governed by the five-factor test adopted and reiterated by the Second Circuit.  See, e.g., Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 99 (2d Cir. 2012).  In its analysis, however, this Court placed primary reliance on a sixth factor also mentioned with approval by the Second Circuit; the overlap between discovery in the parallel

criminal and civil proceedings and the concomitant concern that Ms. Jordan

would obtain discovery helpful to her criminal case that would otherwise not be

available under the New York Rules of Criminal Procedure.  (Order, May 17,

2012, at 3, citing, Louis Vuitton, 676 F.3d at 100, n.14.)

It is not Ms. Jordan's intention to re-litigate the question of whether that

factor should be the decisive one.  Compare Campbell v. Eastland, 307 F.2d

478 (5th Cir. 1962) *with* Securities and Exchange Commission v. One or More

Unknown Purchasers of Securities of Global Industries, LTD., 2012 U.S. Dist.

WL 5505738 at *5 (S.D.N.Y., Nov. 9, 2012)("The Court is not convinced that a

civil defendant's access to, and use of, civil discovery to gain otherwise

unavailable insight into a criminal proceeding, without more, provides

compelling support for a discovery stay."); Securities and Exchange

Commission v. Oakford Corp., 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998)("[T]o

the extent that the defendants' discovery requests simply result in the

happenstance that in defending themselves . . . they obtain certain ordinary

discovery that will also be helpful in the defense of their criminal case, there is

no cognizable harm to the government . . . beyond its desire to maintain a

tactical advantage.").

However, with the filing of Mirra's civil action against Ms. Jordan,

covering identical issues as her action against him, it is clear that the feared

discovery "benefit" to Jordan is illusory.  As a defendant in Mirra's unstayed civil action, Ms. Jordan has access to virtually every discovery device available to her as a plaintiff in her own action; only her right to a trial and recovery (if successful) is stayed.  Mirra has, with at least the prosecution's connivance, completely undercut the basis for the stay that he and DANY had originally obtained.   In any event, Ms. Jordan already possesses an overwhelming number of forged documents including wire transfer authorizations, loans and mortgage documents, and fraudulent contracts and filings that evolved from a conspiracy orchestrated by Mirra to fraudulently convert Ms. Jordan's assets.  These documents are more than sufficient to establish for a jury Mirra's motive to harm her and her son Jude, and will be so proffered in the criminal case.

Of equal importance, the on-going delay of Ms. Jordan's criminal trial, now over seventeen months since the stay was obtained, provides an additional and independent basis for vacating the stay.  The delay thus far and the additional delay to come has prevented the efficient resolution of Ms. Jordan's civil case far beyond what was reasonably envisaged by the parties in April of last year.

Courts that have granted stays in cases based upon civil cases having some overlap with criminal prosecutions have expected that "the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be

17

quickly resolved due to Speedy Trial Act considerations." <u>Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical</u>, 886 F.Supp. 1134, 1139 (S.D.N.Y. 1995).  DANY's handling of Ms. Jordan's criminal prosecution has long ago defeated that expectation.  And of course, murder charges are excluded from speedy trial requirements under New York State's statutory speedy trial guarantees.  N.Y.C.P.L. §30.30.

The various courts within the Southern and Eastern Districts have repeatedly emphasized the timely and efficient resolution of civil cases is the most important factor militating against these types of stays, and accordingly, have carefully limited the length that a stay will remain.   In <u>SEC v. One or More</u>, 2012 U.S. Dist. LEXIS 162772, at *5, decided after this Court issued its stay, the district court granted a stay limited to six months, noting that "[o]f greater significance to judicial efficiency is the uncertainly as to when the criminal proceedings will conclude."  And in <u>Twenty First Century Corp. v. LaBianca</u>, 801 F.Supp. 1007, 1010-1011 (E.D.N.Y. 1992), heavily relied upon by this court, the district court granted a stay on September 25, 1992, noting that "[s]ince the criminal trial is scheduled to proceed in November of 1992, little delay will be occasioned by granting the government a stay; thus, the plaintiff will suffer minimal harm."

In Ms. Jordan's case, the length of the stay, seventeen months and counting, is without precedent.  See, e.g, In re Air Cargo Shipping Services Antitrust Litigation, 2010 U.S. Dist. WL 5027536 (E.D.N.Y. 2010)(Government requested a three month stay of interrogatories due to the ongoing criminal investigation.  Held: "Given the relatively brief, and limited, nature of the stay requested by the government, no significant burden would be imposed on the plaintiffs."); City of New York v. Gutlove & Shirvint, Inc., 2008 U.S. Dist. LEXIS 91016 (E.D.N.Y. 2008)(A four-month stay of discovery was granted when plaintiff was using discovery to demand all documents in defendant's possession that were relevant to an ongoing criminal investigation); Securities and Exchange Commission v. Treadway, 2005 U.S. Dist. LEXIS 4951 (S.D.N.Y. 2005)(Where the criminal trial was not scheduled until four months after the close of discovery, such a delay is an unacceptable impairment in the efficient resolution of the civil case); Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, 886 F.Supp. 1134 (S.D.N.Y. 1995)(Seven month stay, by which time the criminal trial would be concluded, would not "unreasonably prolong" the civil proceeding); Marria v. Turitto, 1995 U.S. Dist. LEXIS 22218 (E.D.N.Y. 1995)(Stay warranted of §1983 action for two to three weeks, by which time the criminal prosecution would be concluded).

At this point, where Mirra has elected to go forward with his own civil action against Ms. Jordan, judicial efficiency is best served by allowing both actions to go forward on a certain schedule, independent of the vagaries of the pending criminal case.  This is particularly true in light of the fact that DANY was exclusively responsible for the adjournment, *sine die*, of the September 16, 2013 trial date due to its wrongful withholding of taped evidence which the trial court ruled should have been turned over much sooner.  (Decision and Order, Aug. 2, 2013, at 2-3; Exhibit A).

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that her motion to lift stay of proceedings be granted.

Dated:  New York, NY
        November 8, 2013

_____
Allan L. Brenner (ALB5018)
536 West Penn Street – 2nd Floor
Long Beach, New York 11561
516-897-6145
brenner.allan@yahoo.com

*Attorney for Plaintiff*

20