UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAYMOND A. MIRRA, JR.<br><br>Plaintiff,<br><br>-against-<br>GIGI JORDAN,<br><br>Defendant. | Case No. 13 Civ. 5519 (AT) |

### DISTRICT ATTORNEY NEW YORK COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO INTERVENE PURSUANT TO FRCP 24(A) AND (B) AND FOR A STAY OF DISCOVERY

Christina Ante
Assistant District Attorney
Of Counsel

Cyrus A. Vance, Jr.
District Attorney New York County
One Hogan Place
New York, New York 10013
Email: antec@dany.nyc.gov
(212) 335-9149 (tel)
(212) 335-4390 (fax)

## TABLE OF CONTENTS

Page

TABLE OF
AUTHORITIES…………………………………………………………………………3

PRELIMINARY
STATEMENT………………………………………………………………………...5

BACKGROUND……………………………………………………………….......5

ARGUMENT

     A. THE DISTRICT ATTORNEY SHOULD
       BE GRANTED PERMISSION TO
       INTERVENE……………………………………………………………..8

     B. THE COURT SHOLD GRANT A STAY OF
       DISCOVERY……………………………………………………………13

CONCLUSION……………………………………………………………………17

2

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Arden Way Assocs. v. Boesky,
   660 F. Supp. 1494 (S.D.N.Y. 1987) ................................................................ 14

Campbell v. Eastland,
   307 F.2d 478 (5th Cir. 1962) ................................................................ 15,16

Deegan v. United States,
   517 U.S. 820 (1996) ................................................................ 16

Emich Motors Corp. v. General Motors Corp.,
   340 U.S. 558 (1951) ................................................................ 15

Grayes v. DiStasio,
   166 A.D.2d 261 (1st Dept. 1990) ................................................................ 15

Jordan v. Mirra,
   12 Civ. 1742 ................................................................ 9

Kashi v. Gratsos,
   790 F.2d 1050 (2d Cir. 1986) ................................................................ 13

Lili B. v. Henry F.,
   235 A.D.2d 512 (2nd Dept. 1997) ................................................................ 15

Morris v. A.F.S.C.M.E.,
   2001 WL 123886 (S.D.N.Y. Feb. 9, 2001) ................................................................ 9, 14

SEC v. Chestman,
   861 F.2d 49 (2d Cir. 1988) ................................................................ 13

SEC v. Kozlowski,
   2003 WL 1888729 (S.D.N.Y. Apr.15, 2003) ................................................................ 9

Twenty First Century Corp. v. LaBianca,
   801 F.Supp. 1007 (E.D.N.Y. 1992) ................................................................ 8, 16

United States v. Kordel,
   397 U.S. 1 (1970) ................................................................ 13

3

United States v. One 1964 Cadillac Coupe DeVille,
    41 F.R.D. 352 (S.D.N.Y. 1966) .......................................................................... 14

United States v. Podell,
    572 F.2d 31 (2d Cir. 1978) .............................................................................. 15

**STATUTES**

New York Criminal Procedure Law §250.10 ......................................................... 6

New York Penal Law § 35.05(1) ........................................................................ 12

New York Penal Law §125.25(1) ......................................................................... 5

**OTHER AUTHORITIES**

Fifth Amendment ........................................................................................... 15

Fed. R. Civ. P.24(a)(2) ..........................................................................5, 7, 9, 13

Fed. R. Civ. P. 24(b)(2)...........................................................................5, 7, 9, 13

4

## PRELIMINARY STATEMENT

The New York County District Attorney ("District Attorney") respectfully submits this Memorandum in support of its application to intervene in this case, pursuant to Federal Rules of Civil Procedure 24(a) and/or 24(b), for the sole purpose of moving to stay proceedings in this civil action pending the resolution of an overlapping criminal matter against the Defendant herein, Gigi Jordan ("Jordan"), presently before a New York State Supreme Court, Criminal Term. For the reasons set forth below, the District Attorney respectfully requests that the Court grant this motion, and stay further proceedings in this action.

## BACKGROUND

Defendant Gigi Jordan currently stands indicted in New York State Supreme Court, Criminal Term, on one count of Murder in the Second Degree under New York Penal Law §125.25(1), for the poisoning to death of her eight-year-old son, Jude Mirra, at the Peninsula Hotel on or about February 5, 2010.[1]  The criminal proceedings against Jordan are pending before the Honorable Charles H. Solomon, Jr., in the Supreme Court of the State of New York, County of New York, Part 82.

Jordan was arrested on February 5, 2010. She was arraigned on February 16, 2010, and entered a not guilty plea. Bail was denied, and Jordan currently remains incarcerated in the New York City Corrections Department on Rikers Island, awaiting

---

[1] Exhibit 1: People v. Gigi Jordan, Indictment Number 610/2010

trial.

During the pending criminal prosecution, Jordan filed a Bail Motion pursuant to New York Criminal Procedure Law (CPL) § 250.10[2] wherein she claimed that she intends to rely upon defenses of "justification, necessity and duress" to the murder charge she is facing, and in particular, intends to raise the novel defense of "altruistic filicide." See Exhibit 2: Jordan's Bail Application at 55-57. According to Jordan, the factors that motivated her to kill her son Jude included her alleged belief that plaintiff Raymond Mirra, Jr. ("Mirra") "was planning to kill [Jordan]" in order "to avoid discovery of his financial crimes," and further, Jordan's alleged fear that if she were killed, the biological father of her son Jude, Emil Tzekov, "would obtain custody of and/or access to Jude and continue to sexually and physically abuse him." Id., at 58.

After review, the trial court, Justice Solomon, concluded that the issues raised by Jordan concerning an "altruistic filicide" defense were not persuasive regarding bail, and denied her application. See Exhibit 3: Justice Solomon's decision on bail. In so denying the bail application, Justice Solomon took specific note of the extent to which Jordan relied upon the alleged conduct of Mirra as a basis of her novel defense, stating "Defendant candidly acknowledges that the defense, to which she gives the name 'altruistic filicide,' is one of first impression . . . [A] great part of the

---

[2] New York Criminal Procedure Law §250.10 requires that a defendant intending to offer psychiatric evidence in support of a defense (e.g. insanity or extreme emotional disturbance) must provide notice to the District Attorney of the defense. The notice has been submitted as a "Qualified" psychiatric notice, however no such "qualified" notice exists under New York State law.

argument made by the defense in this application for bail centers on defendant's ex-husband, Ray Mirra." Id. at 5.[3]

During the pendency of Jordan's murder prosecution, on or about March 9, 2012, she filed a civil Complaint against Mirra bringing claims sounding in fraud, fraud in the inducement, breach of contract and breach of fiduciary duty. See Exhibit 3: Complaint 12 Civ. 1742.  On April 25, 2012, the District Attorney moved to intervene in that action pursuant to the Federal Rules of Civil Procedure 24(a) and/or 24(b), for the sole purpose of seeking a stay of discovery pending disposition of Jordan's criminal prosecution. See Exhibit 4: District Attorney Motion to Intervene and Stay Discovery.  On May 17, 2012, District Judge Katherine B. Forrest of the Southern District of New York, ordered a stay to that action, finding that Jordan's "novel" altruistic filicide defense includes "significant reliance upon the same financial transactions at issue here" and that discovery would be a "detriment to the public if the Court allowed an end run around the narrow discovery rules of criminal procedure." See Exhibit 5: Judge Forrest's Order dated May 17, 2012.

Thereafter, on August 7, 2013, Plaintiff Mirra filed the instant civil Complaint against Defendant Jordan, who is his former business partner and ex-wife. Plaintiff Mirra asserts a number of claims against Jordan including slander, false light invasion of privacy and intrusion upon seclusion. These claims stem from an August 2012

---

[3]Jordan's counsel has yet to request or obtain a ruling in the criminal action on whether, as a matter of law, the Court will recognize "altruistic filicide" as a defense to the Second Degree Murder charges Jordan is facing in New York state court.

7

interview of Jordan with the reporter Denis Hamil of the New York Daily News. In that interview, Jordan reiterated many accusations against Mirra that she had alleged in support of her "novel" altruistic filicide defense.

## ARGUMENT

The District Attorney respectfully requests that the Court grant it leave to intervene for the limited purpose of requesting a stay of the discovery proceedings in this matter. Intervention and a stay of discovery pending resolution of Jordan's criminal case is warranted and appropriate because of the significant overlap of issues between the criminal and civil cases and the public interest to prevent the subversion of the criminal discovery process.

A. The District Attorney Should Be Granted Permission to Intervene

Courts "have allowed the government to intervene in civil actions - - especially when the government wishes to do so for the limited purpose of moving to stay discovery." Twenty First Century Corp. v. LaBianca, 801 F.Supp. 1007, 1009 (E.D.N.Y. 1992). See also Morris v. A.F.S.C.M.E., 2001 WL 123886 at *1 (S.D.N.Y. Feb. 9, 2001) ("It is well-established that the Government may intervene in a federal civil action to stay discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact").

This Court has recognized the right of the New York State District Attorney's

8

office to intervene into federal civil court proceedings for the limited purpose of seeking a stay of discovery, where the federal action involves overlapping issues to state criminal prosecutions.  See SEC v. Kozlowski, 2003 WL 1888729 (S.D.N.Y. Apr.15, 2003) (granting motion for intervention by New York County District Attorney's office, and granting stay of discovery in SEC's civil enforcement action against Dennis Kozlowski pending completion of criminal proceedings against defendant); Morris v. A.F.S.C.M.E., supra (granting New York County District Attorney's motion to intervene and stay discovery relating to individual defendant who was the subject of pending criminal prosecution). And, of course, Judge Forrest ordered a stay in the civil proceeding of Jordan v. Mirra, 12 Civ. 1742. Exhibit 5.

The District Attorney submits that its intervention into this action is warranted under Federal Rules of Civil Procedure 24(a) and/or (b). Under Fed. R. Civ. P.24(a)(2), a non-party is permitted to intervene as a matter of right when it "claims an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." In addition, permissive intervention is authorized under Fed. R. Civ. P. 24(b)(2) when the nonparty "has a claim or defense that shares with the main action a common question of law or fact." The District Attorney respectfully submits that it is entitled to intervene as a matter of right in this action, or alternatively, that permissive intervention is warranted, given the relationship and significant overlap of Mirra's claims in this action, based upon

9

Jordan's media statements, to the factual issues that Jordan has raised in support of her proffered defense in the pending criminal proceeding.

There are several material overlaps of factual allegations in both litigations. For example, the issues raised in Mirra's Complaint in this action materially overlap with the issues Jordan has presented as purported support for the defense she intends to present in her pending criminal prosecution. As in the prior civil matter, Index Number 12 Civ. 1742, wherein Judge Forrest issued a stay of the discovery proceedings, here there is material overlap of the factual allegations supporting Jordan's "novel" criminal defense with those Mirra asserts in support of his civil claims. The overlap is significant and were discovery permitted at this point it would result in an "end run" around the criminal discovery rules.

Specifically, by that bail application, Jordan asserted that Mirra had "mafia connections" with the "Bruno-Testa-Scarfo faction of the Philadelphia Mob" Exhibit 2 at 20. Here, Mirra has alleged that Jordan's statement to the news reporter that Mirra has "close ties to the ruthless Philadelphia mob" was a defamatory statement. Mirra's Complaint at 15, para. F.

In addition, by her bail application, Jordan stated that Mirra "defraud[ed her] of over $100 million" by "forging Ms. Jordan's signature on a wide variety of real estate deeds, loan instruments, trust instruments, and brokerage accounts" Exhibit 4 at 25. By his complaint, Mirra alleges defamation citing to Jordan's public claim that Mirra "was looting [Jordan], forging millions in bank transfers and withdrawals from [her]

10

banks" Mirra's Complaint at 15 para. e.

Further, a material overlap between the pending criminal prosecution and the case before this Court concerns Mirra's hiring of Emil Tzekov, the biological father of Jordan's son. In her bail application, Jordan claimed that Mirra paid Tzekov "a salary of $5,000 per month" to "stick around, help out, and act like Jude's father" even though, Tzekov, Mirra, and the baby sitter were "sexually and physically abusing" Jude at the same time. Exhibit 2 at 10-11. Jordan further stated in the bail application that she feared that "Mirra would kill her, or attempt to have her declared incompetent, and that Jude would be returned to Tzekov, where he would be subjected to continued sexual abuse for the rest of his life" Exhibit 2 at 41. In support of his defamation claim Mirra relies on Jordan's alleged statements to the Daily News that Mirra "hired" and "kept" [Tzekov] to drive me crazy," to "drive me into a nervous breakdown," and [t]o worry that my son would be raped and tortured" Mirra's Complaint at 14-15 para. b to d.

A further overlap exists with Jordan's professed fear that Mirra wanted to kill her. In her bail application, under the heading of "Gaslighting and Terror ", Jordan has alleged Mirra engaged in "gaslighting," which is defined as the "stalking harassing, and intimidating behavior that stops just short of that which is usually provable." Exhibit 2 at 36, 43 fn. 35. As an example of such "gaslighting," Jordan claims that during a movie two men sat on either side of her and Jude in a "nearly empty theater" and then followed her and Jude to a bookstore and later to a Starbuck's, again sitting

11

down "on either side of" Jordan and Jude. Exhibit 2 at 41. Mirra relies on this alleged encounter in support of his defamation claim by citing Jordan's allegation to the reporter that "in an otherwise empty movie theater . . . [t]wo men came in. Each one took an aisle seat at either end of our row" and "the same two guys followed us" to Starbucks where "[o]ne came inside. The other stood outside in the rain." Mirra's Complaint at 17 para. k. Each of these above described allegations presents an overlap on questions of fact.[4]

Jordan's proposed criminal defense rests in great part on her alleged personal and financial relationships with Mr. Mirra and Mr. Tzekov. The nature of those relationships is essential to not only Jordan's criminal defense, but is also the basis of allegations during the Daily News interview, which of course, are the basis of Mirra's civil claims. Given the significant overlap between Jordan's proffered criminal defense and her public statements which form the basis of Mirra's civil action, the District Attorney respectfully submits that all discovery in this action should be stayed pending the disposition of Ms. Jordan's criminal matter.

Besides there being significant overlap which would warrant intervention, the District Attorney also has a "discernible interest in intervening in order to prevent

---

[4] New York Penal Law § 35.05(1) provides in pertinent part that "the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense." Jordan's criminal defense team have not moved or received a ruling by the Court regarding the legal viability of her proposed defense of "altruistic filicide." Instead, Jordan's counsel submitted a proffer of the defense in conjunction with a request for setting of bail (which was denied by the trial court) under the rationale that "because she has a viable defense which she is vigorously pursuing, the Court can be assured that she will appear before the Court when required." Exhibit. 2, at 5. As Justice Solomon recognized, if Ms. Jordan's defense were accepted, it would be the first time that a court had allowed this defense in the annals of New York State criminal law.

12

discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." See SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (ruling that district court had not abused its discretion in permitting intervention by the United States Attorney for the Southern District of New York under either Fed. R. Civ. P. 24(a) or (b) and granting stay of discovery of civil action by SEC "pending disposition of a criminal investigation concerning the same underlying facts"). Broad civil discovery rules and procedures available in this civil action should not be used to procure information that would not be available to Jordan in her criminal case. The use of such discovery mechanisms would allow Jordan to tailor testimony and defenses to conform to the District Attorney's proof.

Lastly, the District Attorney's interests in the enforcement of New York state's criminal law statutes and in ensuring the orderly process of its criminal proceedings cannot be represented by the parties in this matter, further warranting intervention by the District Attorney in this action and the granting of the District Attorney's application for a stay of this action pending disposition of Ms. Jordan's criminal proceeding.

B. The Court Should Grant a Stay of Discovery

It is well established that this Court has the discretionary authority to stay a case pending before it if the interests of justice so require. See United States v. Kordel, 397 U.S. 1, 12 n. 27 (1970); Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir.

13

1986). "Depending on the particular facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or impose protective orders." Morris v. A.F.S.C.M.E., supra at *2, citing SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir.)(en banc), cert. denied, 449 U.S. 993 (1980).

The factors to be considered in granting a stay of a civil action include: (1) the private interests of the plaintiff in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. See Arden Way Assocs. v. Boesky, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987).

It is evident from Jordan's submissions in the criminal proceeding that the same transactions and events that are the subject of this civil action are also the factual predicate for Jordan's novel defense to the murder charges against her. See United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil action until disposition of the criminal matter."). The District Attorney respectfully submits that, at least until such point that the state court rules on the issue of law of whether Ms. Jordan will be allowed to present her defense of "altruistic filicide," this Court should stay discovery in this action for several reasons.

14

First, Mirra's attempts of discovery in the civil action would be thwarted by Ms. Jordan's assertion of her Fifth Amendment privilege against self-incrimination. Discovery would entirely be one-sided, in favor of Jordon who would reap a wind-fall of discovery material while Mirra would receive nothing to advance his civil claims. Campbell v. Eastland, 307 F.2d 478, 487, fn. 12 (5th Cir. 1962)( "self-incrimination privilege would effectively block any attempts to discover from the defendant").

Next, a stay of discovery does not prevent Mirra from pursuing his claims against Jordan once criminal proceeding concludes.    Indeed, should there be a conviction in the criminal proceeding, it is likely that Mirra would be in a superior position to assert collateral estoppel. Under collateral estoppel, a prior criminal conviction, whether by jury verdict or guilty plea, of a party to the civil proceeding estops that party from denying those common factual and legal issues directly determined in the criminal proceeding. Grayes v. DiStasio, 166 A.D.2d 261, 262-263 (1st Dept. 1990)("a criminal conviction, whether by plea or after trial, is conclusive proof of its underlying facts in a subsequent civil action and collaterally estops a party from relitigating the issue"); Lili B. v. Henry F., 235 A.D.2d 512 (2nd Dept. 1997); See also   Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568-69 (1951);United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978).

Lastly, the interests of the District Attorney and the public interest are aligned in this case in ensuring that the criminal discovery process is not subverted, and that

15

criminal conduct is appropriately prosecuted.  To allow Jordan to pursue discovery from Mr. Mirra and non-parties in the instant matter would allow her to circumvent the criminal discovery procedures, and pursue broader discovery through this action on the same transactions and events she has raised in support of her proposed defense in the criminal action.  See Twenty First Century Corp. v. LaBianca, supra, 801 F.Supp. at 1010-11 ("[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules").  Such discovery would also allow a criminal defendant such as Jordan the opportunity to manufacture evidence or tailor testimony to conform to the District Attorney's proof.  Campbell v. Eastland, supra, 307 F.2d at 487, fn. 12.[5]  As recognized in Deegan v. United States, 517 U.S. 820, 827 (1996), federal courts have the power to manage civil litigation "to avoid interference with" criminal prosecutions.  Accord Twenty First Century Corp. v. LaBianca, 801 F.Supp. at 1009.

For all of these considerations, the District Attorney respectfully submits that a

---

[5] "Traditionally, the narrow scope of discovery in criminal litigation is justified by three considerations which are said to be peculiar to criminal law.  First, there has been a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence.  Second, it is supposed that revealing the identity of confidential government informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government.  Finally, it is argued that since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain the opportunity to surprise the prosecution whereas the state would be unable to obtain additional facts.  This procedural advantage over the prosecution is thought to be undesirable in light of the defendant's existing advantages.  The validity of each of these objections must be appraised in each of the situations in which the defendant may seek discovery and must be weighed against the importance to the defendant of the disclosure.'"  Id.

16

stay of this action until the conclusion of the criminal proceeding against Ms. Jordan is warranted.

## CONCLUSION

In sum, the District Attorney respectfully requests that this Court grant its application to intervene for the limited purpose of seeking a stay of discovery in this action until the resolution of Plaintiff's criminal matter, and further that the Court order that discovery in this action be stayed. Because there is a substantial overlap between Mirra's claims in this action regarding Jordan's statements to a newspaper and the defense she has proffered in response to the State's murder charges, a stay of this action is warranted and appropriate to allow for the fair and proper process of the criminal proceeding. Furthermore, a stay of this action will not hinder Mirra's ability to press forward with the civil claims he has presented in this action in the future.

17

Dated:  New York, New York
November 18, 2013

S/Christina Ante [CA1227]
Christina Ante
Assistant District Attorney
Of Counsel

Cyrus A. Vance, Jr.
District Attorney New York County
One Hogan Place
New York, New York 10013
Email:  antec@dany.nyc.gov
(212) 335-9149 (tel)
(212) 335-4390 (fax)

18